THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL ADAMS, Defendant-Appellant.

Second District No. 2—88—0857

Opinion filed June 5, 1990.

75

DUNN, J., specially concurring.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Daniel Adams, was indicted in the circuit court of Du Page County on one count of criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3)), and following defendant's plea of guilty, the court sentenced him to three years' imprisonment on December 2, 1987. On August 18, 1988, the trial court entered an order finding defendant to be a habitual child sex offender and certifying defendant to be such a habitual child sex offender pursuant to the Habitual Child Sex Offender Registration Act (Act) (Ill. Rev. Stat. 1987, ch. 38, par. 221 et seq.).

Defendant raises the following issues on appeal: (1) whether the trial court lacked jurisdiction to enter the August 18, 1988, order certifying him as a habitual child sex offender; (2) whether the Act violates the eighth amendment to the United States Constitution; (3) whether the Act violates article I, section 11, of the Illinois Constitution; (4) whether the Act violates the equal protection clause of the Federal and State Constitutions; and (5) whether the Act violates the due process clause of the Federal and State Constitutions.

Defendant appeared before the court on December 2, 1987, to plead guilty to criminal sexual assault. Prior to accepting the plea agreement, the trial court inquired as to defendant's criminal history. The State told the court defendant was placed on probation July 31, 1985, for aggravated criminal sexual abuse against the same daughter who was the victim of the instant case. Defendant's counsel acknowledged that this was correct. The court then admonished defendant and listened to a factual basis for the plea that stated, among other things, that defendant's daughter would have testified that she was 12 years old when her father entered her bed, removed her clothing, and placed his penis into her anus.

Just after the court sentenced the defendant, the prosecutor informed the court that by statute the State was required to file a habitual child abuse offender form which required defendant's signature. The court ordered defendant to sign the form. This form is not contained in the record. There are no written findings indicating that the trial court determined defendant to be a habitual child sex offender or that the trial court certified defendant as such.

On May 3, 1988, the State filed a motion in the circuit court to have defendant certified pursuant to the Act. Defendant objected on

grounds of equal protection and on the basis that the trial court was without jurisdiction because 30 days had passed since entry of judgment. The trial court found no violation of equal protection and ruled that it could certify defendant at this date because it was a ministerial function. The August 18, 1988, order states that defendant is found to be a habitual child sex offender and is so certified based upon findings made on December 2, 1987.

The Act, enacted in 1986, requires that anyone convicted of a second offense in Illinois of criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, or aggravated criminal sexual abuse when the offense is a felony, against a victim under 18 years of age, shall be certified as a habitual child sex offender. (Ill. Rev. Stat. 1987, ch. 38, par. 222.) A habitual child sex offender must register with the chief of police in the municipality he resides or moves to for up to 10 years after his conviction or the time he is released from prison or other confinement. (Ill. Rev. Stat. 1987, ch. 38, pars. 223, 227.) Registration consists of a statement in writing by the offender giving information required by the State Police which may include fingerprints and photographs. (Ill. Rev. Stat. 1987, ch. 38, par. 228.) An offender must notify the law enforcement agency of any change of address within 10 days. (Ill. Rev. Stat. 1987, ch. 38, par. 226.) Violation of the Act is a Class A misdemeanor. Ill. Rev. Stat. 1987, ch. 38, par. 230.

We first address defendant's contention that the trial court lacked jurisdiction on August 18, 1988, to enter an order finding him to be a habitual child sex offender and certifying him as such because more than 30 days had passed since judgment was entered in the case. We begin by noting that defendant only raises a jurisdictional challenge to the timeliness of the entry of the order and does not raise any other basis for setting the order aside regarding the procedures used in determining he was a habitual child sex offender. As such, we will limit our review to the jurisdictional issue presented on appeal.

The State responds that the statute sets no time limit for the certification and, as the certification is a mandatory act, the certification may be entered at any time. The State also contends that, as the trial court retains jurisdiction over its records and retains the power to correct them, such residual jurisdiction pertains to the entry of mandatory findings, as here. As we agree that the trial court under the circumstances here retained jurisdiction to correct its record, we need not address the alternate basis suggested by the State.

■ When a defendant has been convicted, sentenced and placed into the custody of the Department of Corrections, the court render-

ing judgment and imposing sentence loses jurisdiction over the case and is without power to vacate, set aside or modify the judgment. *(People v. Wakeland* (1958), 15 Ill. 2d 265, 269, 154 N.E.2d 245; see *People v. Glenn* (1962), 25 Ill. 2d 82, 85, 182 N.E.2d 670.) Even though the trial court may lose jurisdiction of a case, it does not lose jurisdiction over its own records and may correct those records to reflect accurately the judgment that was in fact entered. *Glenn*, 25 Ill. 2d at 85, 182 N.E.2d at 672.

■ In this case, the parties agreed at the sentencing hearing on December 2, 1987, that defendant had been convicted of criminal sexual abuse in 1985 in Stephenson County. Additionally, the assistant State's Attorney requested, and the court directed, defendant to sign a "Habitual Child Abuse Offender form." The written order evidencing judgment does not, however, contain any finding regarding defendant's status as a habitual child sex offender or any reference to a certification of such. On the other hand, the order of August 18, 1988, expressly finds defendant to be a habitual child sex offender and certifies him as such by referring to the court's findings of December 2, 1987.

Section 2(A) of the Act provides, in pertinent part, as follows:

"Upon such conviction the court shall certify that the person is a 'habitual child sex offender' and shall include the certification in the order of commitment." Ill. Rev. Stat. 1987, ch. 38, par. 222(A).

While the procedure employed at the December 2, 1987, sentencing hearing should have included an express written finding of habitual child sex offender status and certification thereof by the trial court, the report of proceedings does indicate that the trial court was aware that defendant was a habitual child sex offender based on his prior conviction in 1985 and that some effort was made to comply with the Act, albeit less than ideal. Under these particular circumstances, any lack of such finding or certification in the written judgment must be viewed as an oversight or inaccuracy in the record. Thus, the trial court retained jurisdiction to correct the record to reflect accurately its determination on December 2, 1987, that defendant was a habitual child sex offender under the Act.

■ We next address defendant's contention that the Act's registration requirement constitutes cruel and unusual punishment. In this regard, defendant initially relies on *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554, in arguing that the registration requirement constitutes punishment thereby implicating the eighth amendment to the United States Constitution.

We believe defendant's reliance on *Kennedy* is misplaced. *Kennedy* sets forth the various factors for determining whether a disability constitutes punishment in the context of a fifth amendment due process analysis and did not reach the eighth amendment issue in that case. *Kennedy*, 372 U.S. at 159-86, 9 L. Ed. 2d at 655-71, 83 S. Ct. at 562-77; see *Ingraham v. Wright* (1977), 430 U.S. 651, 671-72 n.40, 51 L. Ed. 2d 711, 730 n.40, 97 S. Ct. 1401, 1412-13 n.40.

Moreover, in *Ingraham v. Wright* (1977), 430 U.S. 651, 51 L. Ed. 2d 711, 97 S. Ct. 1401, the Supreme Court noted that an eighth amendment analysis is appropriate in determining the constitutionality of an alleged punishment where the underlying conduct has already been established through formal criminal proceedings, whereas it is inappropriate to reach an eighth amendment analysis where the alleged punishment has been invoked absent a formal criminal process. (*Ingraham*, 430 U.S. at 671-72 n.40, 51 L. Ed. 2d at 730 n.40, 97 S. Ct. at 1412-13 n.40, comparing *Trop v. Dulles* (1958), 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590, with *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554.) The Court further pointed out that the State does not acquire the power to punish with which the eighth amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process. *Ingraham*, 430 U.S. at 671-72 n.40, 51 L. Ed. 2d at 730 n.40, 97 S. Ct. at 1412-13 n.40.

Where, as here, the alleged punishment is invoked after a defendant is found guilty, the appropriate analysis to apply in challenging the relevant statutory provision is that under the eighth amendment and not due process. This is equally true in addressing the initial question of whether the challenged provision constitutes punishment. Accordingly, we apply the analysis set forth in *Trop v. Dulles* (1958), 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590, an eighth amendment case, rather than that provided in *Kennedy*, a due process case, to the eighth amendment issue in this case.

In applying the analysis set out in *Trop* to the registration requirement at issue here, we conclude that the registration requirement does not constitute punishment, and therefore, the eighth amendment is not implicated in the first instance. In *Trop,* the Court stated that in deciding whether a law is penal a court must look to the purpose of the statute. (356 U.S. at 96, 2 L. Ed. 2d at 639, 78 S. Ct. at 595.) If a statute imposes a disability for the purpose of punishment then it is penal, but if it imposes a disability, not to punish, but for some other legitimate governmental purpose then it is nonpenal. (356 U.S. at 96, 2 L. Ed. 2d at 639-40, 78 S. Ct. at 595-96.) While any

statute that creates a disability as a consequence of certain conduct may have both a penal and nonpenal effect, the controlling nature of such statutes normally depends on the evident purpose of the legislature. 356 U.S. at 96, 2 L. Ed. 2d at 640, 78 S. Ct. at 596.

The statute at issue here requires a person who meets the definition of a habitual child sexual offender to register with the appropriate local police agency. The pertinent issue, applying the *Trop* analysis, is whether the legislative purpose of this provision is to punish persons who have been convicted twice for certain child sex offenses within the appropriate time frame or whether the statute accomplishes some other legitimate governmental purpose. We find the legislative debates to be instructive on this issue.

Representative Parke, the House sponsor of this legislation, characterized it as "one of the most important Bills *** in regards to protecting our children." (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208.) He further emphasized that "this kind of legislation will help our law enforcement agencies stop this kind of carnage on our children. Society demands that we protect our children." (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208.) Such statements are a clear indication that the purpose of the statute is to aid law enforcement in preventing future sex offenses against children. On the other hand, there is no indication in the legislative history that the registration requirement was intended to serve the purpose of deterrence or retribution, two goals of punishment. Protection of children from sex offenses is very much part of the State's unquestionable interest in protecting the health, safety and welfare of its citizens. As such, the registration requirement at issue here clearly serves a legitimate governmental purpose.

Furthermore, the purpose served by the registration requirement is so fundamental as to far outweigh any penal effect that the statute might have. The statute places no more constraint on the liberty of someone required to register with the local police authority than do many of the well-established civil disabilities associated with felony convictions in Illinois, such as limitations on possession of firearms, the right to vote or the right to hold public office. (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 38, pars. 24—1.1, 1005—5—5(b), (c).) Although defendant suggests that he will be subject to being hauled before police authorities whenever a child in his chosen community claims to be a victim of a sex offense, such an argument is purely speculative and without any basis in the record. Nor do we perceive the Act to limit or dilute in any way well-recognized constitutional protections ordinarily afforded to anyone who becomes the subject of a police investi-

gation.

Additionally, the statute does not burden defendant's privacy interests as his convictions will be a matter of public record. Although the statute provides that defendant, as a habitual child sexual offender, register with the local police chief or, if appropriate, the sheriff, it is an offense to make public such registration. Under these circumstances, it cannot be said that the registration requirement will have any significant impact on defendant's liberty or privacy interests.

In light of the legitimate governmental purpose that the statute was intended to serve and the negligible impact on defendant's liberty or privacy interests, we hold that the registration requirement is not punishment under the eighth amendment.

Even were we to hold that the registration requirement constitutes punishment, it does not rise to the level of cruel and unusual punishment. As to whether the registration requirement is cruel and unusual, defendant maintains that it is cruel because it provides for punishment after a defendant has served his sentence and because it fails to take into consideration the underlying factual basis for conviction of the specified offenses. He further contends that it violates the proportionality requirement of the eighth amendment.

■■ The eighth amendment prohibition against cruel and unusual punishment " 'is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice.' " (McCleskey v. Kemp (1987), 481 U.S. 279, 300, 95 L. Ed. 2d 262, 283, 107 S. Ct. 1756, 1770, quoting Weems v. United States (1910), 217 U.S. 349, 378, 54 L. Ed. 793, 803, 30 S. Ct. 544, 553.) The basic concept underlying the eighth amendment is that the penalty must accord with the dignity of man. (McCleskey, 481 U.S. at 300, 95 L. Ed. 2d at 283, 107 S. Ct. at 1771.) Additionally, the punishment must be proportional to the offense. McCleskey, 481 U.S. at 300, 95 L. Ed. 2d at 283, 107 S. Ct. at 1770; see Solem v. Helm (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001.

■■ In the present case, there is simply nothing about the registration requirement that fails to comport with humane justice. Nor does the registration requirement affront the dignity of man. It merely requires an offender who has twice been convicted of a sex offense against a child to register with the appropriate police authority. Such registration is kept confidential and is limited to a 10-year period following either defendant's sentence or release from custody if he is incarcerated. Further, there is nothing in the Act that would allow local police authorities to use such information to deny defendant his

constitutional rights, nor does the Act in any way dilute or impair the well-established constitutional protections afforded a citizen who becomes the subject of a police investigation. It cannot be said that the registration requirement even remotely approaches the outer fringes of inhumane or undignified punishment.

■ Furthermore, the registration requirement is not disproportionate to the offense. We begin by emphasizing that, outside the context of capital punishment, successful challenges to the proportionality of a particular sentence are exceedingly rare. (*Solem*, 463 U.S. at 289-90, 77 L. Ed. 2d at 649, 103 S. Ct. at 3009.) Moreover, reviewing courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crime. (*Solem*, 463 U.S. at 290, 77 L. Ed. 2d at 649, 103 S. Ct. at 3009.) In assessing whether a particular sentence is proportional to an offense, we are guided by three objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. (*Solem*, 463 U.S. at 292, 77 L. Ed. 2d at 650, 103 S. Ct. at 3011.) Applying these factors, and keeping in mind our obligatory deference to the legislature, we believe the registration requirement is not disproportionate under the eighth amendment.

■ First, for an offender to qualify as a habitual child sex offender under the Act he must have committed, not once but twice, a felony sex offense against a child. There can be no doubt that commission of one such offense, let alone two, is serious as the four qualifying offenses carry severe penalties. More importantly, we can identify no reasoned basis to conclude that someone who twice commits one of the qualifying offenses does not present a very serious threat to society. We can perceive of no group who is deserving of more protection against this type of offender than our children. In contrast to the seriousness of repeated sexual offenses against children, the Act merely requires a repeat offender to register with the local authorities where he lives. As we have repeatedly noted already, concerns of privacy and loss of constitutional protections under the Act are unfounded and speculative.

Second, we compare the sentences imposed on other criminals in Illinois. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue is excessive. (*Solem*, 463 U.S. at 291, 77 L. Ed. 2d at 650, 103 S. Ct. at 3010.) In applying this part of the *Solem* test, we find the habitual criminal statute (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1) to

be instructive. That statute provides for a mandatory life sentence upon conviction of a third offense, either a Class X felony, criminal sexual assault or first degree murder, under the appropriate circumstances. Obviously, in the narrow context of habitual offenders, the Act under consideration provides a far less serious penalty than that provided for under our other habitual criminal statute. Moreover, if we consider other offenses generally, we cannot say that more serious offenses in Illinois are punished equally or less seriously than that provided for in the Act. Clearly, any length of prison term is more serious a penalty than mere registration with local police authorities.

Finally, we consider the sentences imposed in other jurisdictions for repeat child sex offenders. Our research indicates that seven other States currently have some version of a habitual child sex offender or sex offender registration statute. (Ala. Code §13A—11—200 (1989); Ariz. Rev. Stat. Ann. §13—3821 (1988); Ark. Stat. Ann. §12—12—901 (1989); Nev. Rev. Stat. Ann. §207.151 (Michie 1989); Ohio Rev. Code Ann. §2950.02 (Baldwin 1989); Okla. Stat. tit. 57, §582 (1989); Utah Code Ann. §77—27—21.5 (1989).) While a clear majority of States do not presently require sex offenders to register, we think that the number that do is significant. While the defendant here may have been treated less severely in some States, he would have been comparably treated in others. We cannot say that the registration requirement in the Act is so unique as to render it cruel and unusual. More importantly, when we consider all three objective factors, we are compelled to hold that the registration requirement is not disproportional to the underlying offense and does not, therefore, violate the eighth amendment.

■ We next consider defendant's contention that the registration requirement is inconsistent with the objective of restoration to useful citizenship contained in article I, section 11, of our State Constitution (Ill. Const. 1970, art. I, §11). We find no merit to this argument, however. We cannot perceive how requiring a habitual child sex offender to register with local police authorities will detract from his rehabilitation, particularly where such registration is required to be kept confidential. In fact, registration is far less of a hindrance to defendant's restoration to useful citizenship than would be the imposition of a lengthy prison sentence as the consequence of his habitual status. The registration requirement does not violate article I, section 11, of our constitution.

■ We next address defendant's equal protection claim under the Federal and State Constitutions. (U.S. Const., amend XIV; Ill. Const. 1970, art. I, §2.) We note at the outset that statutory enactments

carry a strong presumption of constitutionality, and all doubts must be resolved in favor of the Act's validity. (*People v. Esposito* (1988), 121 Ill. 2d 491, 497, 521 N.E.2d 873.) In considering an equal protection claim, we generally employ a two-step analysis to determine whether a legislative classification deprives an individual of equal protection. (*Esposito*, 121 Ill. 2d at 499, 521 N.E.2d at 876-77.) Initially, we must determine if the statute under consideration affects a fundamental right or discriminates against a suspect class. (*Esposito*, 121 Ill. 2d at 499, 521 N.E.2d at 877.) If it does, we subject the legislation to strict scrutiny and uphold it only if it serves a compelling State interest. (*Esposito*, 121 Ill. 2d at 499-500, 521 N.E.2d at 877.) Here, it is clear that no suspect class is involved. Nor does the registration requirement affect any fundamental right. It does not implicate any right of privacy as it mandates confidentiality, nor does it affect defendant's liberty beyond mere speculation. Although defendant suggests in a footnote in his brief that it impacts on his fundamental right to travel, he fails to identify how registration under the Act affects such a right. As we cannot identify how the registration requirement affects defendant's right to travel, or any other fundamental right, we need not apply strict scrutiny in assessing defendant's equal protection claim.

 Because the classification challenged here does not affect a fundamental right or discriminate against a suspect class, the proper standard for judging the statute is the rational basis test. (*Esposito*, 121 Ill. 2d at 500, 521 N.E.2d at 877.) Under this test, a statutory classification must bear a rational relationship to a valid legislative purpose, and the classification created by the statute will be set aside as violative of the equal protection clause only if based on reasons totally unrelated to the pursuit of a legitimate State goal. (*Esposito*, 121 Ill. 2d at 500, 521 N.E.2d at 877.) The equal protection clauses of the Federal and State Constitutions do not prohibit our legislature from enacting legislation which affects different classes of persons differently, and, in the absence of involvement of a fundamental right, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. *Esposito*, 121 Ill. 2d at 500-01, 521 N.E.2d at 877.

 The legislative purpose in enacting this Act was to protect children from sex offenders and aid law enforcement in doing so. That such a purpose is legitimate is without question. Furthermore, the means chosen by the legislature is rationally related to that legitimate purpose. Requiring habitual child sex offenders to register with local police authorities will allow those authorities to keep abreast of

potential threats to the children of a particular community which might be posed by the presence of a habitual child sex offender. While the Act does little more than provide police with the fact that a habitual child sex offender resides within the community, it clearly serves the purpose of protecting our children. The rationality of a particular statute does not depend on its purported effectiveness, but, rather, is determined only by whether it reasonably serves the purpose of the legislature in enacting it. Accordingly, we hold the Act does not violate the equal protection clause of our Federal and State Constitutions.

 Finally, we address defendant's contention that the registration requirement violates due process under the Federal and State Constitutions. (U.S. Const., amend XIV; Ill. Const. 1970, art. I, §2.) In doing so, we are mindful that legislative enactments carry a strong presumption of constitutionality, and the party challenging the statute has the burden of clearly establishing its invalidity. (*People v. Lindner* (1989), 127 Ill. 2d 174, 178, 535 N.E.2d 829.) We also note that defendant's due process challenge to the Act is based on substantive rather than procedural due process grounds. In such a case, if the challenged statute does not affect a fundamental right, the appropriate standard of review is the rational-basis test. (*Lindner*, 127 Ill. 2d at 179, 535 N.E.2d at 831.) As we have already determined that no fundamental right is involved, that the legislature had a legitimate purpose in passing the Act, and that the Act rationally serves that purpose, we must conclude that the Act does not deny defendant due process.

For the foregoing reasons, the order of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE DUNN, specially concurring:

I concur with the majority's result; however, I write specially because I believe the Act constitutes punishment under the United States and Illinois Constitutions, though not unconstitutional punishment.

In deciding this issue, the majority, relying on *Trop v. Dulles* (1958), 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590, stated that the test for deciding whether the Act constitutes punishment is whether the legislative purpose behind the Act was punishment or some other

legitimate purpose. I believe the stated purpose of the Act is only one of several factors that must be considered in addressing this question. In *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554, cited by defendant, the Supreme Court listed several factors that have traditionally been applied to determine whether an Act is penal or regulatory in character. The Court stated:

"Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in different directions." *Kennedy*, 372 U.S. at 168-69, 9 L. Ed. 2d at 661, 83 S. Ct. at 567-68.

The majority declined to address all the *Kennedy* factors, reasoning that *Kennedy* was a due process case, not an eighth amendment case, unlike *Trop*, the case upon which it relied. I fail to see that this distinction bears any significance to the issue at hand. In *Kennedy*, the court addressed whether divestiture of citizenship for persons who flee the country to evade the draft constituted a penal sanction under which the due process clause would require affording the safeguards of a criminal prosecution. (*Kennedy*, 372 U.S. at 164, 9 L. Ed. 2d at 658, 83 S. Ct. at 565.) The issue in *Kennedy* is the same as the issue presented here and in *Trop*. Is the statute penal in nature? I doubt very much that the *Kennedy* court would have offered a different set of tests had the issue been over the eighth amendment.

Applying the *Kennedy* factors to the Act, I find they point in different directions. On the one hand, the Act has an alternative rationale purpose, aiding law enforcement in protecting children against child abuse, and I do not believe the Act is excessive in relation to that purpose. On the other hand, I find the Act imposes an affirmative disability or restraint, it comes into play on a finding of *scienter*, it applies to behavior that is criminal, and, regardless of the legislature's stated intent, it will promote traditional aims of punishment—retribution and deterrence. I believe the presence of these factors requires finding that the Act is punishment.

I am not convinced that the Act imposes no more of a constraint on liberty than civil disabilities associated with convicted felons such as limitations on possessions of firearms, the right to vote, or the

right to hold public office. In my opinion, the Act imposes a more significant affirmative disability or restraint than is stated by the majority. It is a disability that necessarily entails a loss of privacy. Defendant, if he chooses to start a new life in Illinois after his release from custody, must announce himself as a habitual child sex offender to law enforcement in his community. For 10 years he must live his life knowing that local law enforcement has been made aware of his past child sex abuse convictions. I am not persuaded that defendant suffers no more of a loss of privacy than he would by the public record of his convictions. The Act ensures a certain and direct intrusion that may not necessarily result from defendant's public record. Nor am I persuaded that the confidentiality provision negates finding a loss of privacy. I find the significant intrusion to be the process under the Act itself, not whether the information may be leaked to the community.

For the above reasons, I find that the Act does constitute punishment under the United States and Illinois Constitutions, though I agree with the majority that it is not unconstitutional punishment. Finally, I note that the California Supreme Court, in its determination of whether its registration requirement for sex offenders constituted punishment, addressed the issue by analyzing each *Kennedy* factor and concluded that its registration requirement was punishment. *In re Reed* (1983), 33 Cal. 3d 914, 919-22, 663 P.2d 216, 217-20, 191 Cal. Rptr. 658, 660-62.