VINCENT JACOBSON *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

Second District No. 2—93—1275

Opinion filed November 22, 1994.—Modified on denial of rehearing February 23, 1995.

James E. Ryan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Barbara L. Greenspan and Teresa M. Mooney, Special Assistant Attorneys General, of counsel), for appellants.

Fred Tsao, Bernard Shapiro, and Catherine Ritts, all of Prairie State Legal Services, Inc., of Rockford, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The defendants, the Department of Public Aid (the Department) and its Director, Phil Bradley, appeal the judgment of the circuit court reversing the administrative decision of the Director of the Department that the plaintiffs, Vincent and Marilyn Jacobson, were required to reimburse the Department as responsible relatives for their 19-year-old daughter who was receiving aid to families with dependent children (AFDC).

At issue in this appeal is the constitutionality of that portion of section 10—2 of the Illinois Public Aid Code (the Code) (305 ILCS 5/1—1 *et seq.* (West 1992)) which determines the support responsibility of parents whose 18- to 21-year-old children live at home. Section 10—2 provides, in relevant part, that "[t]he parents are severally liable for the support of any child under age 21, except that a parent is not liable for a child age 18 or over if such child is not living with the parent or parents." 305 ILCS 5/10—2 (West 1992).

In December 1990, the plaintiffs' daughter, Pamela, applied for and received AFDC for herself and her infant son. On March 27, 1991, the Department issued a notice to the plaintiffs of their obligation to support Pamela. The Department ordered the plaintiffs to pay $134 per month as their continuing support obligation, with an additional $916 owed for payments made to Pamela between December 1990 and June 1991. The plaintiffs filed a notice of appeal from that order on the basis that the Department "knew that Pamela was living at home and should have adjusted her monthly check in accordance."

At the hearing before the Department, the plaintiffs stated that they were requesting either a modification or a cancellation of their obligation based on a change in their income and on the in-kind support they provided to Pamela. The Department's field representative stated that the Department had recalculated the plaintiffs' obligation

because of the decrease in their income, and the plaintiffs now owed $770 for prior payments and $110 per month.

Marilyn Jacobson testified that she lived with her husband, her adult son, her daughter Pamela, and Pamela's child. The plaintiffs did not charge Pamela rent. Marilyn opined that an appropriate amount of rent for Pamela would be one-quarter of $327, the plaintiffs' monthly mortgage payment. The plaintiffs also provided food for Pamela in the amount of approximately $100 per month and clothing in the amount of $100 to $150 per year. Pamela drove one of the plaintiffs' cars. Vincent Jacobson testified that, to satisfy the support obligation, the plaintiffs were paying the Department half of the grant that Pamela received. In addition, the plaintiffs testified that their household income was insufficient to meet the needs of the entire household, including Pamela.

In its final administrative decision, the Department ordered the plaintiffs to pay $115 per month for current support and $802 as reimbursement of AFDC from December 1990 through June 1991. The plaintiffs filed a timely complaint for administrative review in the circuit court.

At the hearing in the circuit court, the plaintiffs argued that the Department should have given them credit for the in-kind support they provided to Pamela. The plaintiffs asserted that they were, in effect, paying twice for Pamela's support. The defendants responded that the amount of aid Pamela received was based on her not having to pay for housing or food, so that the in-kind support was considered in the initial determination of Pamela's eligibility for aid. The plaintiffs also argued that the statutory distinction between parents whose 18- to 21-year-old children live at home and those whose children do not violated the equal protection clauses of both the United States and Illinois Constitutions. See U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

The trial court held that, in order to constitutionally interpret the relevant statutory sections and the Department's regulations, the guidelines of sections 504 and 505 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/504, 505 (West 1992)) would have to be incorporated into the procedure for measuring the ability of responsible relatives to provide support. The court noted that the statute was otherwise constitutional. The court therefore held that the plaintiffs were entitled to credit for their in-kind contributions pursuant to section 505(3)(h) of the Dissolution Act (750 ILCS 5/505(3)(h) (West 1992)). Because the amount of the in-kind contributions exceeded the amount of aid Pamela received, the court ruled that the plaintiffs were not required to reimburse the Department.

At the hearing on the defendants' motion to reconsider the judgment, the court reiterated its equal protection concern. In the court's view, however, it was the Department's failure to properly apply sections 504 and 505 of the Dissolution Act, as required by section 10—3 of the Code, which triggered the equal protection problem. The court found that the guidelines were meant to apply to all parents whose 18- to 21-year-old children reside in the parental home. The Department's misapplication of the statute thus discriminated against the plaintiffs by treating them differently from other members of the class, in violation of the fourteenth amendment guarantee of equal protection under the law. As before, the court stated that, in interpreting the statute and the guidelines, sections 504 and 505 of the Dissolution Act must be incorporated and the guidelines therein followed. Because the Department failed to do so in this case, the court denied the motion to reconsider.

On appeal, the defendants contend that the trial court erred in reversing the administrative decision of the Director of the Department.

Funds for AFDC are made available to a State from the Federal government if the State develops plans for aid and services to needy families with children. (42 U.S.C.A. § 601 (West 1991).) Those plans must provide, *inter alia*, that the recipient must assign to the State any rights to support he or she may have from any person. (42 U.S.C.A. § 602(a)(26)(A) (West 1991).) Illinois has complied with these mandates in enacting the Code (305 ILCS 5/1—1 *et seq.* (West 1992)). Accordingly, by accepting aid under the AFDC program, the recipient automatically assigns, to the extent of the aid provided by the Department, all rights, title, and interest in support payments to the Department; and the person liable for providing such support becomes correspondingly obligated to the State. *In re Marriage of Clark* (1988), 170 Ill. App. 3d 690, 692.

■ Section 10—2 of the Code provides, in relevant part, that "[t]he parents are severally liable for the support of any child under age 21, except that a parent is not liable for a child age 18 or over if such child is not living with the parent or parents." (305 ILCS 5/10—2 (West 1992).) Because Pamela was under the age of 21 and living with her parents, the plaintiffs were considered "responsible relatives" under the Code and were thus liable for her support. Had Pamela not been living at home, the Code would not have imposed upon the plaintiffs any obligation to support her, as she was over 18 years old. The issue, therefore, is whether this statutory distinction between parents whose 18- to 21-year-old children live with them and those whose children do not violates the equal protection clauses of the State and Federal Constitutions. We find that it does.

Like all statutory enactments, section 10—2 carries a strong presumption of constitutionality, and all doubts must be resolved in favor of its validity. (*People v. Esposito* (1988), 121 Ill. 2d 491, 497.) Thus, the burden rests on the challenging party to prove that the legislation is unconstitutional. *Esposito*, 121 Ill. 2d at 497.

■ Article I, section 2, of the Illinois Constitution provides that "[n]o person shall *** be denied the equal protection of the laws." (Ill. Const. 1970, art. I, § 2.) In resolving challenges brought under that provision of the Illinois Constitution, we apply the same standards that govern equal protection claims made under the fourteenth amendment to the Federal Constitution. (*Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 124; *People v. Reed* (1992), 148 Ill. 2d 1, 7.) The heart of the equal protection guarantee is that persons similarly situated shall be treated similarly. (*In re Marriage of Diehl* (1991), 221 Ill. App. 3d 410, 427.) The equal protection clause does not deny States the right to treat different classes of people differently; rather, it denies them " 'the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute.' " *Nevitt*, 157 Ill. 2d at 124, quoting *Reed v. Reed* (1971), 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 229, 92 S. Ct. 251, 254.

As an initial matter, the Department argues that the parents of AFDC recipients who allow their 18- to 21-year-old children to reside at home are not "similarly situated" to those who do not allow their AFDC-recipient children in the same age group to live in the parental home. To support this proposition, the Department asserts that the first category of parents is held as responsible relatives "because there is no other responsible relative available to meet the support needs of the person who is receiving AFDC." By contrast, the Department maintains that the latter category of parents is exempt from responsibility because the Code recognizes that a responsible relative, such as a spouse, may have a primary support obligation to a welfare recipient living outside the home.

An examination of section 10—2 reveals the flaw in the Department's analysis. Despite the Department's claim that parental liability for 18- to 21-year-old AFDC recipients living at home is based upon the nonexistence of any other responsible relatives, section 10—2 clearly establishes that even the parents of an AFDC recipient who has married will be liable for support if that child lives at home. The statute provides that "a parent is *not* liable for a child of any age if the child has married *and* is not living with the parent or parents." (Emphasis added.) (305 ILCS 5/10—2 (West 1992).) It is evident, therefore, that the distinguishing factor in section 10—2's determination of parental support liability is the residence of the child.

We find this to be a distinction without a difference. The Department's characterization of the classification as between parents who do or do not allow their 18- to 21-year-old AFDC-recipient children to live at home is misleading. That an 18- to 21-year-old may elect not to live with her parents says nothing about whether the parents would allow her to live at home. Whether the decision comes from a sense of independence or a desire to avoid placing another strain on the family's resources, it is only the fact of *where* the child resides—and not *why*—that we must consider in the "similarly situated" analysis. We cannot say that the parents of 18- to 21-year-old AFDC recipients who live at home are not "similarly situated" with those whose children live separately for purposes of equal protection.

■ In considering an equal protection claim, we must employ a two-step analysis to determine whether a legislative classification deprives an individual of the equal protection of the laws. (*People v. Adams* (1990), 198 Ill. App. 3d 74, 84.) First, we must determine whether the statute in question affects a fundamental right or discriminates against a suspect class. (*Adams,* 198 Ill. App. 3d at 84.) If so, we will apply strict scrutiny and uphold the statute only if it is narrowly tailored to serve a compelling State interest. (*Adams,* 198 Ill. App. 3d at 84; *People v. Shephard* (1992), 152 Ill. 2d 489, 500.) If the challenged statute does not implicate a fundamental right or discriminate against a suspect class, we turn to the second prong of the equal protection analysis and apply the rational basis test. *Adams,* 198 Ill. App. 3d at 84.

In the case at bar, the disadvantaged class is that comprised by parents whose 18- to 21-year-old children live at home. We cannot say as a constitutional matter that these parents and children constitute a suspect class. As the Supreme Court stated in *Lyng v. Castillo* (1986), 477 U.S. 635, 638, 91 L. Ed. 2d 527, 533, 106 S. Ct. 2727, 2729,

> "Close relatives are not a 'suspect' or 'quasi-suspect' class. As a historical matter, they have not been subjected to discrimination; they do not exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group; and they are not a minority or politically powerless. [Citation.] In fact, quite the contrary is true."

Accordingly, we turn to whether the statutory classification infringes upon a fundamental right.

The plaintiffs argue that section 10—2 creates an incentive for parents to evict and deny support to their AFDC-recipient children. Although we acknowledge that the tradition of grandparents sharing a household with parents and children is deserving of constitutional

protection (*Moore v. City of East Cleveland* (1977), 431 U.S. 494, 504, 52 L. Ed. 2d 531, 541, 97 S. Ct. 1932, 1938), it does not follow that section 10—2 creates an impermissible burden on family living arrangements.

In *Bowen v. Gilliard* (1987), 483 U.S. 587, 97 L. Ed. 2d 485, 107 S. Ct. 3008, the Supreme Court rejected a similar argument in a constitutional challenge to section 602(a)(38) of the Social Security Act (the SSA) (42 U.S.C.A. § 602(a)(38) (West 1991)). The SSA provision in *Bowen* required AFDC applicants to include any parent or dependent minor sibling living with them in the filing unit, thus ending the previous practice of allowing applicants to exclude certain family members, such as children receiving support payments, whose income might disqualify the family or reduce its benefits. (*Bowen*, 483 U.S. at 593-94, 97 L. Ed. 2d at 496-97, 107 S. Ct. at 3013.) The challenged provision was designed to " 'ensure that the income of family members who live together and share expenses [would be] recognized and counted as available to the family as a whole.' [Citation.]" (483 U.S. at 593-94, 97 L. Ed. 2d at 496, 107 S. Ct. at 3013.) Evidence at the district court level included an affidavit from one mother who stated that she had sent a child to live with the child's father in order to avoid the requirement of including that child, and the support received from the child's father, in the AFDC filing unit. (*Bowen*, 483 U.S. at 601 n.16, 97 L. Ed. 2d at 501 n.16, 107 S. Ct. at 3017 n.16.) Nevertheless, the Court found that the provision did not sufficiently interfere with any fundamental right so as to warrant heightened scrutiny by the district court. *Bowen*, 483 U.S. at 601, 97 L. Ed. 2d at 501, 107 S. Ct. at 3017.

We likewise conclude that section 10—2 of the Code does not "directly and substantially" interfere with family living arrangements so as to interfere with a family's fundamental right to live in the type of family unit it chooses. (See *Bowen*, 483 U.S. at 603, 97 L. Ed. 2d at 502, 107 S. Ct. at 3018; *Lyng*, 477 U.S. at 638, 91 L. Ed. 2d at 533, 106 S. Ct. at 2729.) The provision here, like that in *Lyng*, does not order or prevent any group of persons from living together. (*Lyng*, 477 U.S. at 638, 91 L. Ed. 2d at 533, 106 S. Ct. at 2729.) Moreover, as the Court stated in *Bowen*, the fact "[t]hat some families may decide to modify their living arrangements in order to avoid the effect of the [statute], does not transform the [statute] into an act whose design and direct effect is to 'intrude on choices concerning family living arrangements.' " *Bowen*, 483 U.S. at 601-02, 97 L. Ed. 2d at 501, 107 S. Ct. at 3017, quoting *Moore*, 431 U.S. at 499, 52 L. Ed. 2d at 537, 97 S. Ct. at 1936.

We turn, then, to the second prong of the equal protection analy-

sis—that is, whether section 10—2 meets the rational basis test. It is well settled that a statute which involves economic or social welfare policy and does not create a suspect classification or infringe upon a fundamental right will be upheld against an equal protection challenge if rationally related to a legitimate State purpose. (*American National Bank & Trust Co. v. Anchor Organization for Health Maintenance* (1991), 210 Ill. App. 3d 418, 425.) Courts applying the rational basis test simply inquire whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 74.) Moreover, courts will uphold a legislative classification against an equal protection challenge if any set of facts can reasonably be conceived which would sustain the classification. *Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 275.

As the Illinois Supreme Court has recognized, the overriding purpose of the Code is the alleviation and prevention of poverty. (*Lawrie v. Department of Public Aid* (1978), 72 Ill. 2d 335, 348; see also 305 ILCS 5/1—1 (West 1992).) To that end,

"the allocation of the State's fiscal resources must be made with an eye toward providing relief to the greatest number of people. Economic reality demonstrates that the source of funds for public assistance programs is finite and, accordingly, any construction or application of the Code must reflect that fact. [Citation.]" (*Rivera v. Department of Public Aid* (1985), 132 Ill. App. 3d 213, 217.)

Further, the section of the Code which determines the support responsibility of relatives, in its declaration of public policy, states:

"It is the intent of this Code that the financial aid and social welfare services herein provided supplement rather than supplant the primary and continuing obligation of the family unit for self-support to the fullest extent permitted by the resources available to it. This primary and continuing obligation applies whether the family unit of parents and children or of husband and wife remains intact and resides in a common household or whether the unit has been broken by absence of one or more members of the unit." (305 ILCS 5/10—1 (West 1992).)

We agree with the plaintiffs, however, that "[t]he maintenance and strengthening of the family unit [is also] a principal consideration in the administration of [the] Code." (305 ILCS 5/1—1 (West 1992).) In addition, the Code mandates that "[a]ll public aid policies shall be formulated and administered to achieve this end." 305 ILCS 5/1—1 (West 1992).

In light of the stated purposes of the Code, we can find no rational basis for distinguishing between those parents whose 18- to 21-year-

old children live with them and those whose children do not in the determination of support liability. Although we fully appreciate the State's interest in extending relief to the greatest number of needy people, we cannot allow a greater burden to fall on persons in the plaintiffs' position simply because their children live at home. The Code itself recognizes the primary and continuing obligation of the "[f]amily unit"—defined as a husband, wife, and a child or children under age 21 (305 ILCS 5/2—11 (West 1992))—*regardless* of whether the members of the family share a common residence. (305 ILCS 5/10—1 (West 1992).) Section 10—2, by contrast, singles out for liability those parents who have already demonstrated a willingness to provide assistance to their children by allowing them to live at home.

We cannot see how imposing a support obligation solely on parents whose 18- to 21-year-old AFDC-recipient children live at home in any way promotes "[t]he maintenance and strengthening of the family unit." (See 305 ILCS 5/1—1 (West 1992).) Instead, section 10—2 encourages parents to evict their children in order to avoid incurring a support obligation to the State. Although this incentive does not rise to the level of an impermissible burden on the fundamental right of families to share a common home (see *Bowen*, 483 U.S. at 602, 97 L. Ed. 2d at 501, 107 S. Ct. at 3018; *Moore*, 431 U.S. at 504-05, 52 L. Ed. 2d at 541, 97 S. Ct. at 1938), it is nonetheless directly at odds with the stated purpose of the Code.

■ We recognize that the function of this court is not to second guess the wisdom of the legislature or of the " 'state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.' " (*Lawrie v. Department of Public Aid* (1978), 72 Ill. 2d 335, 348, quoting *Dandridge v. Williams* (1970), 397 U.S. 471, 487, 25 L. Ed. 2d 491, 503, 90 S. Ct. 1153, 1162-63.) Further, it is not only inevitable but necessary in the management of a public welfare system that lines be drawn. In the area of economics and social welfare, a statutory classification will not offend the Constitution simply because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' [Citation.]" (*Dandridge*, 397 U.S. at 485, 25 L. Ed. 2d at 501-02, 90 S. Ct. at 1161.) The fundamental principles of equal protection, however, will not tolerate a legislative classification made arbitrarily and without a reasonable basis. (See *County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 335.) Section 10—2 of the Code presents such a classification.

The Department asserts two interests in holding the parents of 18- to 21-year-old AFDC recipients who live at home liable for their support. First, the Department argues that the State has a legitimate

interest in maintaining an equitable balance in the economic status of the families of all welfare recipients by pursuing support obligations from responsible relatives to aid necessitous family members. The Department also contends that the State has a legitimate interest in allocating public funds so as to meet the needs of the largest number of welfare recipients.

We agree that the ends asserted by the Department are both legitimate and, indeed, paramount in the administration of a welfare system. It is not enough, however, that the purpose of a statute be legitimate; in order to survive under an equal protection analysis, the classification may not irrationally differentiate between persons similarly situated. (*People v. Adams* (1991), 144 Ill. 2d 381, 391.) In the case before us, neither interest articulated by the Department presents a sufficient basis for the classification. To say that the pursuit of a support obligation from the plaintiffs results in a greater fund being available to meet the need of a greater number of individuals says nothing to justify why parents who permit their AFDC-recipient children to live at home should face a greater obligation than those who do not.

■ As a final matter, we address the question of the severability of the portion of section 10—2 which creates the improper classification. Section 13—4 of the Code provides that "[s]hould any Section, subdivision, clause, phrase, or provision of this Code be held to be unconstitutional or invalid for any reason whatsoever such holdings shall not affect the validity of the remaining provisions of this Code." (305 ILCS 5/13—4 (West 1992).) Although severability clauses do not conclusively establish legislative intent that invalid provisions of a statute are severable (*People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 532), the absence or presence of a severability clause will be considered "some evidence" of legislative intent (*City of Springfield v. Hall* (1981), 93 Ill. App. 3d 860, 862).

In order to determine whether an invalid part of a statute may be severed, leaving the remainder of the statute intact, the relevant inquiry, as articulated by our supreme court, is as follows:

> " 'If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated.' [Citations.]" *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 73.

The Department argues that the legislative history of section

10—2 suggests that the General Assembly would have passed the statute even in the absence of the classification invalidated here. To support its position, the Department directs us to language of the statute prior to the 1984 amendment which added the invalid provision. In its prior version, section 10—2 provided that "[t]he parents are severally liable for the support of any child under age 21, or age 21 or over if the child is blind or permanently *** disabled" (Ill. Rev. Stat. 1967, ch. 23, par. 10—2 (now codified, as amended, at 305 ILCS 5/10—2 (West 1992))).

The Department's argument is unavailing. We find that the very fact that the legislature chose to amend the statute to include an exception for the parents of 18- to 21-year-old AFDC recipients who do not live at home indicates that the prior version of the statute was no longer acceptable, and that the legislature would not have enacted the statute without the inclusion of the exception. Accordingly, we conclude that the invalid portion of section 10—2 cannot be severed from the remainder of the section, rendering the entirety of section 10—2 unconstitutional. As a result, we need not address the other issues raised by this appeal.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McLAREN, P.J., and THOMAS, J., concur.