*In re* PETITION OF THE VILLAGE OF HANOVER PARK, to Disconnect the Territory of the Hanover Park Fire Protection District, f/k/a the Ontarioville Fire Protection District, Which Lies Within the Village of Hanover Park Corporate Limits (The Village of Hanover Park, Petitioner-Appellee, v. The Hanover Park Fire Protection District, Objector (John McGuire *et al.*, Indiv. and as Members of the Board of Trustees of the Hanover Park Fire Protection District, Objectors-Appellants)).

Second District   No. 2—99—0549

Opinion filed April 6, 2000.

Karl R. Ottosen, Anthony M. Peccarelli, and Shawn P. Flaherty, all of Ottosen, Trevarthen, Britz, Dooley & Kelly, Ltd., of Wheaton, for appellants Clifford Baerlin, Mark Hudson, and John McGuire.

Bernard Z. Paul, of De Kalb, for appellant Hanover Park Fire Protection District.

Norman E. Samelson, of Samelson & Payne, of Des Plaines, and Phillip A. Luetkehans, of Schirott & Luetkehans, of Itasca, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Objectors John McGuire, Clifford Baerlin, and Mark Hudson (objectors) appeal from the trial court's orders denying the objectors' motion to dismiss and granting the petition of the Village of Hanover Park. We affirm.

The Village of Hanover Park (the village) is located in both Cook and Du Page Counties. Fire protection and emergency medical services for the village had been provided by the Hanover Park Fire Protection District (the district), formerly known as the Ontarioville Fire Protection District, since 1956. The district also included areas outside the village boundaries.

On February 5, 1999, the village filed a petition to disconnect all of the territory lying within its corporate boundaries from the district and provide its own fire and emergency services. The district and three of its trustees, John McGuire, Clifford Baerlin, and Mark Hudson, filed an objection to the petition and a motion to dismiss the petition. On April 20 the trial court denied the objectors' motion to dismiss. The village filed a motion to dismiss the objection, which was also denied. After a full hearing, the court found that the petition should be granted and ordered the territory to be disconnected from the district. This appeal followed.

■ The petition to disconnect was brought pursuant to section 21 of the Fire Protection District Act (the Act), which provides in part:

"The territory of a fire protection district within the limits of any city, village or incorporated town may be disconnected from the district in the manner hereinafter provided; (1) if more than 50% of the total territory of the fire protection district is within the limits of the same city, village or incorporated town filing the petition for disconnection; (2) if such municipality, prior to the filing of a petition to disconnect, assumes by ordinance all the bonded indebtedness and other debts of the fire protection district; and, (3) if such municipality, prior to the filing of such petition, assumes by ordinance the obligation of providing fire protection service to the remaining territory of the fire protection district equivalent to the service being rendered by such district." 70 ILCS 705/21 (West 1998).

The objectors first contend that this section of the Act is unconstitutional special legislation. We disagree.

■ Article 4, section 13, of the Illinois Constitution of 1970 provides:

"The General Assembly shall pass no special or local law when a

general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

While this section prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or group to the exclusion of others similarly situated, it does not prohibit all classifications. *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 122 (1995). Only arbitrary legislative classifications are prohibited. *Vernon Hills*, 168 Ill. 2d at 122. If any set of facts can reasonably be conceived that justifies the distinction of the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control and may enact laws applicable only to the persons or objects. *Vernon Hills*, 168 Ill. 2d at 122. Classifications based on population or territorial differences are not, as a matter of law, unconstitutional. *Vernon Hills*, 168 Ill. 2d at 122.

■ The General Assembly's classifications are presumed to be valid, and all doubts are to be resolved in favor of upholding them. *Vernon Hills*, 168 Ill. 2d at 122-23. The party attacking the validity of the classification bears the burden of establishing the arbitrariness of the classification. *Vernon Hills*, 168 Ill. 2d at 123.

■ As the statute before us does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate standard of review is the rational basis test. See *Vernon Hills*, 168 Ill. 2d at 123. Under this standard, we must determine whether the statutory classification is rationally related to a legitimate state interest. *Vernon Hills*, 168 Ill. 2d at 123. A classification based on population or territorial differences will survive a special legislation challenge only (1) where founded upon a rational difference in situation or condition existing in the persons or objects upon which the classification rests, and (2) where there is a rational and proper basis for the classification in view of the objects and purposes to be accomplished. *Vernon Hills*, 168 Ill. 2d at 123.

The objectors posit three theories under which section 21 of the Act is special legislation. The objectors first argue that section 21 does not apply equally to all fire protection districts or municipalities. Section 21 clearly classifies fire protection districts containing a municipality whose corporate boundaries contain over 50% of the districts' territory differently from districts that do not contain such a municipality. However, it is the objectors' burden to show that this classification is arbitrary (see *Vernon Hills*, 168 Ill. 2d at 123), and this the objectors have failed to do. The objectors rely on two cases in which parts of the Act were found to be special legislation and,

therefore, unconstitutional. In *In re Belmont Fire Protection District*, 111 Ill. 2d 373 (1986), our supreme court found unconstitutional a section of the Act that allowed municipalities within counties having a population of between 600,000 and 1 million to disconnect from one fire protection district and transfer to another district that was already providing service to part of that municipality. At the time, only Du Page County fit within that population classification. Our supreme court found no rational reason why a municipality served by multiple fire protection districts in a county with a population between 600,000 and 1 million was any different from a municipality served by multiple districts in a county of less than 600,000 or more than 1 million. See *Belmont*, 111 Ill. 2d at 382. The danger sought to be eliminated, *i.e.*, multiple fire protection districts serving one municipality, existed in other counties as well, regardless of the population of the county in which it was located. *Belmont*, 111 Ill. 2d at 382. Similarly, in *Vernon Hills*, the section of the Act in question allowed non-home-rule-municipalities receiving services from multiple fire protection districts to disconnect territory from one district and transfer it to another district that provided services to the area comprising more than 80% of the municipality's assessed valuation; however, this only applied in counties having a population of between 500,000 and 750,000, which, at the time, only included Lake County. Again, our supreme court found that there was no rational difference of situation or condition that existed among non-home-rule-municipalities served by multiple fire protection districts based on the population of the county in which they are located. The court could find no connection between the county-wide population and the desirability of eliminating smaller fire protection districts within a given municipality. See *Vernon Hills*, 168 Ill. 2d at 126.

■ The statute before us allows municipalities whose territory comprises more than 50% of the total territory of a fire protection district to disconnect from the district so long as the municipality assumes the debt of the district and provides fire protection service, not only to its own municipal territory, but to the remaining territory of the district. Unlike *Belmont* and *Vernon Hills*, there is no population classification limiting this statute to application in only certain counties. All municipalities similarly situated may act under the statute, no matter the population of the counties in which they are located. The objectors argue that presently only a "small minority" of districts in the state contain municipalities so situated. However, this argument misses the point. All municipalities that reach the requisite percentage of territory will be able to act under the statute. No municipality will be prohibited from acting by an arbitrary limit on county

population. In both *Belmont* and *Vernon Hills*, the county population was found to be an arbitrary classification that limited similarly situated municipalities from pursuing their goals under the statute. There is no similar arbitrary classification here. Allowing municipalities making up less than 50% of a district to disconnect and attempt to provide service to the territory outside the municipality would allow multiple municipalities to attempt to provide such service, which would create uncertainty and worthless legal battles. By definition, only *one* municipality can cover more than 50% of a district's territory. Furthermore, it would make little sense for a municipality covering a minority of the district to provide services to the entire district. A municipality covering a majority of the district would not have to extend itself outside its borders as much as a minority territory municipality. We believe there is a rational basis for this classification of municipalities and accordingly determine that section 21 of the Act is not special legislation.

■ The objectors next argue that section 21 arbitrarily favors municipalities over fire protection districts in an impermissible manner. According to the objectors, it is constitutionally impermissible to arbitrarily provide statutory privileges to some governmental units over others. However, our supreme court has held that the classification of governmental agencies based on their functions and activities is proper. See *Fujimura v. Chicago Transit Authority*, 67 Ill. 2d 506, 513 (1977). The cases relied upon by the objectors are distinguishable. The courts in *Hutchings v. Kraject*, 34 Ill. 2d 379 (1966), and *Jahn v. Troy Fire Protection District*, 255 Ill. App. 3d 933 (1994), rely on the similarity of the functions of the governmental units in holding that one type of governmental unit could not be treated more favorably than another. See *Hutchings*, 34 Ill. 2d at 382 ("The infirmity of this legislation lies in classifying governmental units as such, without regard to similarity of function"); *Jahn*, 255 Ill. App. 3d at 940 ("Municipal fire departments and fire protection districts perform the same functions, and therefore they should be treated the same in their potential exposure to tort liability"). Clearly, municipalities and fire protection districts do not perform the same functions, although fire protection may be, as it is in this case, a part of the municipal function. The statute at issue here does not give any special treatment to municipal fire departments over fire protection districts; it allows municipalities the opportunity to provide another service to their inhabitants and to others nearby if certain factors are met. Different units of government have different powers that may affect other units of government. We find no violation of our constitution in giving the power to certain municipalities to disconnect from fire protection

districts in certain instances. This is not an arbitrary classification of local governmental units.

■ The objectors finally argue that section 21 is special legislation because it arbitrarily prefers other types of special districts over fire protection districts. According to the objectors, only fire protection districts, among all special districts in Illinois, are subject to involuntary nonreferendum disconnection and cessation of their governmental purposes by a majority vote of the governing board of a municipality. Once again, our constitution does not require that everyone always be treated the same; similarly situated persons or groups must be treated similarly. See *Vernon Hills*, 168 Ill. 2d at 122. The objectors point to library districts, sanitary districts, and park districts and note that the methods of disconnection provided by statute are different for those districts when compared to the method provided in section 21. However, each type of district has unique methods of disconnection. See, *e.g.*, 70 ILCS 1205/3—6, 3—6a, 3—6b, 3—6d, 13—8 (West 1998) (park districts); 70 ILCS 2305/27, 2805/37 (West 1998) (sanitary districts); 75 ILCS 5/2—6 (West 1998) (library districts). For example, a sanitary district that becomes wholly included in one or more municipalities and contains no unincorporated territory is dissolved by operation of law; no vote or referendum is required. See 70 ILCS 2805/37 (West 1998). Each type of district provides different services that may best be provided in different ways in relation to the municipalities located within the district. The methods of disconnection need not be the same because of these differences in services and the abilities of others, such as municipalities, to provide these services upon disconnection from the districts. The objectors' argument is flawed, since these various districts are not similarly situated. Therefore, section 21 is not special legislation bestowing unfavorable rules upon fire protection districts *vis-a-vis* other similarly situated districts.

The objectors next contend that section 21 violates the equal protection clauses of the United States and Illinois Constitutions. The fourteenth amendment to the Unites States Constitution provides in part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. Article I, section 2, of the Illinois Constitution provides in part that no person shall "be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

■ In considering an equal protection claim, we apply the same standards under both the United States and the Illinois Constitutions. See *Jacobson v. Department of Public Aid*, 269 Ill. App. 3d 359, 364 (1994). The equal protection guarantee requires that all similarly situ-

ated persons be treated similarly; however, different classes of people may be treated differently if the statute creating the classifications is related to the objective of the statute. *Jacobson*, 269 Ill. App. 3d at 364. As we have already determined, section 21 does not implicate a fundamental right or discriminate against a suspect class; therefore, we will apply a rational basis test. See *Jacobson*, 269 Ill. App. 3d at 365. Furthermore, as under the special legislation analysis, section 21 carries a strong presumption of constitutionality, with all doubts to be resolved in favor of its validity; the objectors again carry the burden of proving section 21 unconstitutional. See *Jacobson*, 269 Ill. App. 3d at 364.

■ The objectors raise the same arguments that they raised under the special legislation analysis, contending that section 21 makes irrational distinctions (1) between municipalities and fire protection districts; (2) between fire protection districts and other special districts; (3) among fire protection districts; and (4) among municipalities. For the same reasons given under the special legislation analysis, we conclude that the objectors have failed to carry their burden of proving that section 21 irrationally classifies people or groups or treats similarly situated parties differently. Therefore, we find no violation of equal protection guarantees.

•■ The objectors next contend that the trial court abused its discretion in granting the village's petition to disconnect because the village failed to show that it could provide equivalent ambulance service to the territory outside the municipal boundaries after disconnection. We disagree.

Section 21 sets forth four requirements for disconnection: (1) more than 50% of the total territory of the fire protection district is within the corporate limits of the municipality filing the disconnection petition; (2) prior to filing the petition, the municipality assumes by ordinance all the bonded indebtedness and other debts of the district; (3) prior to filing the petition, the municipality assumes by ordinance the obligation of providing fire protection service to the remaining territory of the district equivalent to the service being rendered by the district; and (4) the municipality files a petition setting forth the aforementioned conditions and a legal description of the territory to be disconnected. See 70 ILCS 705/21 (West 1998). The objectors never filed objections to the 50% requirement or the required ordinances and withdrew any objection to the legal description. The petition itself was entered into evidence without objection. The village fulfilled all the obligations of section 21. The issue raised by the objectors here, *i.e.*, provision of equivalent ambulance service, is not a requirement under section 21, and objectors cite no case law that holds that this is

a prerequisite to disconnection under section 21. Fire protection districts are not, in any case, required to provide ambulance service. See 70 ILCS 705/22 (West 1998). The objectors seek to add to the statutory requirements of section 21. This we will not condone. The village met, without objection, the requirements of section 21, and we find no error here. Assuming, *arguendo*, that ambulance service is to be construed as part of fire protection, there was sufficient evidence that the municipality would be able to provide the same level of all services provided by the district.

The objectors finally contend that the trial court erred in allowing Marc Hummel, village manager of Hanover Park, to provide expert testimony as to the operations of a municipal fire department and the requirements necessary for certain certification by the Illinois Department of Public Health. However, the objectors fail to cite any part of the record in which Hummel gave an expert opinion regarding such issues. We are not required to search the record for support of an appellant's arguments. The objectors have failed to provide any facts on this issue, and we decline to address it.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

THOMAS and RAPP, JJ., concur.