(No. 49437

CHARLES LAWRIE, Appellee, v. THE DEPARTMENT OF PUBLIC AID, Appellant.

*Opinion filed September 19, 1978.*

336

KLUCZYNSKI, J., took no part.

William J. Scott, Attorney General, of Springfield (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant.

Henry Lawrie, Jr., of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, and William H. Hillier, of Lord, Bissell & Brook, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Charles Lawrie, is a mentally retarded adult who has resided at Beverly Farm Foundation, Inc., in Madison County, since 1959, when he was 11 years old. Beverly Farm, a not-for-profit corporation, operates a home for the mentally retarded and is licensed by the Department of Public Health.

In 1972, plaintiff applied for public assistance from the Department of Public Aid (Department) under the Department's Aid to the Aged, Blind or Disabled program (AABD) (Ill. Rev. Stat. 1971, ch. 23, par. 3—1 *et seq.*). Aside from contributions from his parents, plaintiff has no means of support. Since 1969, parents of mentally retarded persons over the age of 21 are not legally responsible for such person's support. Ill. Rev. Stat. 1969, ch. 23, par. 2—11.

Plaintiff's application for aid was denied by the Madison County Department of Public Aid because Beverly Farm refused to enter into a provider agreement with the Department, pursuant to chapter 5550, topic 5556.3, of the Department's Categorical Assistance Manual (now section 1105 of the Department's AABD Manual). This regulation required, among other things, that Beverly accept the Department's rate of payment as payment in full for the services rendered.

Plaintiff appealed the denial of his application by notice to the Department. At the time plaintiff filed his application, the monthly rate charged by Beverly Farm (exclusive of clothing and medical supplies) was approximately $258. At the hearing on plaintiff's appeal, plaintiff's mother testified that the rate had risen to approxi-

mately $300 per month and was expected to increase another $50 per month. The record indicates that if Beverly entered into an agreement with the Department, the level of assistance available to the plaintiff could range from $212 per month to $305 per month, depending on the nature of care required and the program and services provided. Plaintiff's parents sought to supplement the Department's level of assistance with an amount equal to the difference between Beverly's monthly rate and the amount available from the Department.

At the conclusion of the hearing, the Department's hearing officer found that, inasmuch as Beverly refused to accept the Department's rate of payment as payment in full, the maximum assistance available to plaintiff was $100 per month, the Department's basic rate for room and board in a nonapproved institution. The hearing officer further found that, pursuant to section 3—5 of the Illinois Public Aid Code (Code) (Ill. Rev. Stat. 1971, ch. 23, par. 3—5), any amount paid to Beverly Farm by plaintiff's parents would correspondingly reduce the amount of aid available under the Code.

Plaintiff filed a complaint under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) challenging the Department's regulation and policy prohibiting supplementation. The circuit court of Cook County reversed the decision of the Department, holding the Department's "payment in full" regulation and the policy prohibiting supplementation void as not authorized by section 3—5 of the Code and violative of the equal protection clauses of the United States and Illinois constitutions. The Department appealed to the appellate court which, with one justice dissenting, affirmed the circuit court (46 Ill. App. 3d 23). We granted the Department leave to appeal.

The Department here contends that its policy and regulation are not only consistent with the provisions of

the Code but are, in fact, mandated by statute. It also points to a certain Federal regulation which requires that, as a condition to the State's continued receipt of Federal funds, all providers of medical services must accept the State's payment as payment in full.

Plaintiff, on the other hand, asserts that both the Department's regulation and its policy against supplementation are neither authorized by the Code nor required by Federal regulation.

Initially, we note that the parties disagree as to which public assistance program is here involved. The Department contends that the issues are controlled by those rules and regulations promulgated under the Federal Medical Assistance Program (Medicaid) (42 U.S.C.A. sec. 1396 *et seq.*). Plaintiff, on the other hand, contends that certain statutory provisions under the State's AABD program are controlling (Ill. Rev. Stat. 1971, ch. 23, par. 3—1 *et seq.*). Confusion apparently exists because, according to plaintiff, no final determination has yet been made as to the nature or degree of care actually required by the plaintiff's disability.

Review of the various applicable statutes and regulations indicates that assistance is available to individuals in need of institutional care either under the AABD program or the Medicaid program. (See Ill. Rev. Stat. 1971, ch. 23, pars. 3—2, 5—5; Department of Public Aid, Rules & Regulations, Rules 3.51, 4.01, 4.14, hereinafter cited as DPA Rules & Regs.) The assistance available thereunder is dependent upon the nature and degree of care required by the individual and by the individual's available income and resources as set forth in the Department's standards and regulations.

Under the State's AABD program, private, licensed sheltered-care facilities (SCF) may provide basic maintenance services for which reimbursement is made according to a rate schedule promulgated by the Department. (DPA

Rules & Regs., Rule 3.51, Attachments III and IV.) Qualified individuals, who, by Department regulations and standards, require a greater degree of care than that available in a licensed SCF are eligible for public assistance under the Medicaid program. (DPA Rules & Regs., Rule 4.14, Attachment I.) Only licensed skilled nursing facilities (SNF) and intermediate care facilities (ICF) may provide services for individuals under the Medicaid program. The Department employs different rate schedules for that program. (DPA Rules & Regs., Rule 4.14, Attachment II.) The record indicates that Beverly Farm is licensed both as an ICF and an SCF. As will be discussed, we believe that, under either program, there is statutory authority for the Department's "payment in full" policy and for its prohibition against supplementation.

Medicaid and AABD are State-administered Federal programs designed to alleviate hardships to individuals with specific needs and limited financial resources. Federal matching funds are available under either program to States which comply with certain minimum Federal requirements. Illinois, by statute, has elected to receive these matching funds. (Ill. Rev. Stat. 1971, ch. 23, par. 12—4.5.) Because of the finiteness of State resources, the State's continued eligibility for Federal matching funds is of utmost importance.

Assuming, as argued by the Department, that it is the State's Medicaid program which is here involved, we observe that Federal regulations require, as a condition to the State's receipt of Federal matching funds, that "participation in the [Medicaid] program *** be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the [State's] fee structure." (42 C.F.R. sec. 450.30(a)(8).) Section 1105.2(c) of the Department's AABD Manual sets forth a similar requirement. Additionally, section 11—13 of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, par. 11—13)

provides:

> "A vendor payment, as defined in Section 2—5 of Article II, shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or in behalf of the vendor shall bar him from obtaining, or attempting to obtain, additional payment therefor from the recipient or any other person. ***"

Effective October 25, 1977, it is a Federal felony for any Medicaid vendor to charge a patient an amount in excess of the rates established by the State. 42 U.S.C.A. sec. 1396h(d) (Supp. 1978).

Section 12—4.5 of the Code specifically provides that the Department shall cooperate with the Federal Department of Health, Education and Welfare in any reasonable manner, not contrary to the Code, as may be necessary to qualify for Federal aid. Ill. Rev. Stat. 1971, ch. 23, par. 12—4.5.

To permit vendors or providers of service to receive amounts in excess of the Department's determined rate of payment would not only jeopardize the State's continued receipt of Federal funds under the Medicaid program, but would, in fact, permit institutions, such as Beverly Farm, to violate the Federal criminal law. That the Federal government could cut off funds to any State which does not comply is clearly indicated in *Yanez v. Jones* (D. Utah 1973), 361 F. Supp. 701. There, the State of Utah permitted physicians to charge Medicaid recipients for office visits at a rate in excess of Utah's established fee structure. The court held that the plaintiff's class action, against certain State employees charged with administering the State's Medicaid program, stated a cause of action upon which injunctive relief could be granted. In discussing the requirements of 42 C.F.R. sec. 450.30(a)(8), formerly 45 C.F.R. sec. 250.30(a)(6), the court specifically noted that the Department of Health, Education and Welfare has the authority to cut off funds to States which

do not comply. 361 F. Supp. 701, 705.

Accordingly, we find that the Department's regulation, which requires acceptance of payment as payment in full and prohibits supplementation, is authorized by statute and required by Federal regulation.

Were we to assume, as plaintiff argues, that the above-cited statutes and regulations are inapplicable to aid furnished under the State's AABD program, we would, nonetheless, reach the same conclusion.

As noted above, section 11—13 of the Code provides that all vendor payments shall constitute payment in full and shall bar all vendors from obtaining, or attempting to obtain, additional amounts. Plaintiff asserts, however, that a third sentence contained in that section, when read together with section 3—5 of the Code, specifically recognizes the permissibility of supplementation under the AABD program. That sentence provides:

> "*** A vendor payment shall not, however, bar recovery of the value of goods and services the obligation for which, under the rules and regulations of the Illinois Department, is to be met from the income and resources available to the recipient, and in respect to which the vendor payment of the Illinois Department or the local governmental unit represents supplementation of such available income and resources." (Ill. Rev. Stat. 1971, ch. 23, par. 11—13.)

Section 3—5 of the Code provides:

> "*** The aid shall be sufficient, when added to all other income, money contributions and support, to provide the person with a livelihood compatible with health and well-being." Ill. Rev. Stat. 1971, ch. 23, par. 3—5.

In order to understand the meaning and operation of section 11—13 and its interrelationship with section 3—5, it is necessary to analyze the scheme by which the Department, pursuant to statute, determines the level of assistance available to disabled individuals.

Under the AABD program, as under Medicaid, eligi-

bility is, in part, dependent upon the amount of income and resources available to the individual compared to the individual's maintenance needs. If available income and resources, added to contributions of money, substance or services from other sources, are insufficient to meet the person's basic maintenance needs as defined, such individual is eligible for financial aid. Ill. Rev. Stat. 1971, ch. 23, par. 3—1.2. See also 45 C.F.R. sec. 233.20(a)(3)(ii).

Section 3—5 of the Code provides that, in determining the amount and nature of aid to be granted, "[d]ue regard shall be given to the requirements and the conditions existing in each case, and to the amount of property owned and the income, money contributions, and other support, and resources received or obtainable by the person, from whatever source." (Ill. Rev. Stat. 1971, ch. 23, par. 3—5.) To be disregarded are occasional, nominal gifts from legally nonresponsible relatives if such gifts do not significantly assist in meeting an individual's needs. Ill. Rev. Stat. 1971, ch. 23, par. 3—1.2.

The determination of the rate of payment which may be charged a recipient by an institution, and, correspondingly, the maximum amount of assistance available to the individual recipient, is dependent upon the Department's analysis of the nature of care and services required in the particular case. The amount paid in behalf of the recipient by the Department is the dollar sum of that recipient's needs as determined by the Department's schedules minus the sum of the recipient's nonexempt income and resources. (DPA Rules & Regs., Rule 3.41.) If, for example, the Department determines that, pursuant to its rate schedule, a particular individual requires $300 per month to maintain a livelihood compatible with his health and well-being, and such individual has available $100 per month of nonexempt income or assets as defined, the Department's portion of the vendor's payment for such individual's care is $200 per month. Pursuant to the third

sentence of section 11—13, the vendor or provider of service may collect the remaining $100 from the recipient.

Section 11—13, however, does not permit or authorize the vendor or provider of service to charge a rate in excess of that established by the Department's rate schedule. Moreover, pursuant to section 3—5 of the Code, if a recipient's parents supplement the Department's payment, such supplementation would constitute income or resources available to the recipient, and, correspondingly, could reduce the amount of aid paid by the Department in behalf of the recipient. Thus, contrary to the plaintiff's assertion, neither section 11—13 nor section 3—5 of the Code authorizes any additional supplementation of the Department's payments which would result in payment to the vendor or the provider of services of an amount in excess of the approved rate.

Plaintiff contends, however, that the Department's consideration of parental contributions is a denial of equal protection of law inasmuch as the Department allegedly allows supplementation from State agencies such as the Department of Mental Health and Developmental Disabilities (DMHDD).

The only statement contained in the record pertaining to the Department's allowance of supplementation by various State agencies is plaintiff's counsel's statement before the Department's hearing officer. There, plaintiff's counsel stated that certain public and private institutions were receiving amounts from DMHDD in addition to that paid by the Department. Counsel further stated that the State of Illinois spends over $500 per month to maintain residents in DMHDD institutions such as that located in Dixon. The record does not indicate, however, whether any portion of the $500 so spent is paid through the Department. Neither does the record indicate the type of services provided individuals in these institutions. Moreover, pursuant to DMHDD's executive order No. 75, issued

August 23, 1976, any recipient receiving aid through DMHDD who subsequently qualifies for aid under the Department of Public Aid due to movement, redetermination of responsible relative liability, or attainment of age 21, is ineligible for aid from DMHDD. See Department of Mental Health and Developmental Disabilities, Rules and Regulations, Rule 6.09, as amended.

Accordingly, we find the plaintiff's equal protection argument to be without merit.

Plaintiff asserts that the Department's policy, which deters supplementation by parents, is inconsistent with the Code's stated purpose of strengthening and maintaining the family unit (Ill. Rev. Stat. 1971, ch. 23, par. 1—1). While, in certain instances, there may be some validity to plaintiff's argument, we find that the Department's policy is, in fact, consistent with the Code's more overriding purpose—the alleviation and prevention of poverty (Ill. Rev. Stat. 1971, ch. 23, par. 1—1). In order to achieve this result, the State must allocate its limited resources in a manner which will afford relief to the greatest number of individuals. Individuals, such as plaintiff, who receive parental support are less in need than those who do not. While we recognize that the State's consideration of contributions by legally nonresponsible individuals will deter such individuals from making voluntary contributions, it is not the function of this court to "second guess" the wisdom of the legislature or the "state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." (*Dandridge v. Williams* (1970), 397 U.S. 471, 487, 25 L. Ed. 2d 491, 503, 90 S. Ct. 1153, 1162-63.) " '*** [T]he intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. ***' " *Sweet v. Department of Public Aid* (1977), 66 Ill. 2d 195, 208.

Central to the plaintiff's dispute in this case is his underlying contention that, even if his parents provided no support, the amount available under the Department's rate schedule would be insufficient to meet his costs at Beverly Farm. The Department asserts that a number of private and public institutions are willing and able to provide plaintiff with the care required at costs equal to that provided under the Department's rate schedule. While we empathize with the plaintiff's parents' reluctance to remove their son from an institution which has apparently provided satisfactory care for more than 18 years, this court is, of course, in no position to review the Department's economic determinations which are reflected in its rate structure.

We do note, however, that, effective January 3, 1978, all SNFs and ICFs participating in the State's Medicaid program must be reimbursed on a reasonable cost-related basis. (Ill. Rev. Stat., 1977 Supp., ch. 23, pars. 5—5.1 through 5—5.7.) In determining the standard of payment, the Department must consider the actual cost incurred by the facilities in providing the services for public aid recipients, the medical and psychosocial characteristics and needs of the patient, and the actual cost incurred by the facilities in meeting licensing and certification standards. (Ill. Rev. Stat., 1977 Supp., ch. 23, par. 5—5.4.) The Department is also charged with developing a prospective method for determining rates which will allow the facility an opportunity for profit. (Ill. Rev. Stat., 1977 Supp., ch. 23, par. 5—5.5(b)(2).) Presumably, under these new provisions, more facilities will be financially able to participate in the State's Medicaid program.

For all the reasons stated above, we find the Department's regulation and policy to be authorized by and consistent with the provisions of the Code.

Accordingly, the judgments of the circuit and appel-

late courts are reversed.

*Judgments reversed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.