BOARD OF EDUCATION OF THE CITY OF CHICAGO, Plaintiff-Appellant, v. ELI JOHNSON *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—3729

Opinion filed March 8, 1991.

Patricia J. Whitten and Camille E. Willis, both of Chicago, for appellant.

Witwer, Burlage, Poltrock & Giampietro, of Chicago (James B. Dykehouse, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

Defendants appeal from a final administrative review order of the circuit court of Cook County affirming the decision of the Illinois State Board of Education (State Board), which refused to sustain the Chicago Board of Education's (Board) dismissal of defendant, Eli Johnson, a tenured teacher. The issue raised on appeal is whether the decision of the State Board was against the manifest weight of the evidence, contrary to law, and thus erroneously affirmed by the circuit court. We affirm the decisions of the Illinois State Board of Education and the circuit court.

On November 19, 1986, the Chicago Board of Education adopted a Board report charging defendant Johnson with conduct unbecoming a teacher, and requested his dismissal. Johnson was charged with administering and/or engaging in inappropriate and unprofessional physical contact with a student under his control. On November 20, 1986, Johnson was suspended without prior warning and without pay pending his dismissal. The Chicago Board of Education relied on the authority provided by the Illinois School Code, section 34—85 (Ill. Rev. Stat. 1983, ch. 122, par. 34—85), as justification for its dismissal of Johnson without prior warning. This statutory authority provides in pertinent part:

"No teacher or principal appointed by the board of education shall (after serving the probationary period of 3 years specified in Section 34—84) be removed except for cause.

\* \* \*

Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher or principal shall be given reasonable warning in writing, stating specifically the cause which, if not removed, may result in charges." Ill. Rev. Stat. 1983, ch. 122, par. 34—85.

Johnson requested and was granted an administrative hearing by the Illinois State Board of Education pursuant to section 34—85 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 34—85). Hearing Officer George Larney considered the following evidence.

Johnson had been employed by the Board as a teacher since 1962. During this time he had received 16 satisfactory ratings, one unsatisfactory rating, and three excellent ratings. During the academic years 1983-84 and 1984-85, Johnson taught fourth grade at Laura Ward Elementary School, where Nathaniel Longstreet was a student in his class.

On February 26, 1986, an incident occurred between Johnson and Nathaniel. Nathaniel testified before the hearing officer that sometime in the early afternoon, Johnson came over to his desk and picked him up two or three feet from the floor, carried him over toward the blackboard and dropped him. Nathaniel further testified that he fell on the floor, which was concrete covered with carpet. When Nathaniel stood up and went toward the door, Johnson ran over toward him, picked him up and threw him into the air. At the hearing, Nathaniel stated that he fell to the floor and hit his head on a flat piece of steel. When he got up, Johnson pushed him into a corner and punched him in the chest.

At that time, Nathaniel ran out of the room and down the stairs. He reported the above events to Ms. Griffin, the school community representative, who directed Nathaniel to stay with Mr. Young, another teacher, until his mother arrived at the school. By the end of the day, no contact had been made with Nathaniel's mother, so he went home and told her what had occurred. Ms. Longstreet took Nathaniel to St. Anne's Hospital, where he was examined by Dr. Pincham. X rays disclosed that Nathaniel had a possible fracture with a contusion (bruise) in the area of his ninth rib.

Nathaniel did not go to school the next day because he was having chest pains. Nathaniel returned to St. Anne's Hospital one other time because he was having chest pains.

Two other students, Kashonda Jackson and Martese Hilton, testified that they saw Johnson use physical force on Nathaniel on February 26, 1986. However, their accounts of what actually occurred differ from Nathaniel's. Kashonda testified that Nathaniel refused to sit down and to stand in the corner as requested by Johnson, and further attempted to leave the classroom. She testified that when Nathaniel refused to stand in the corner, Johnson pushed him on the chest, with his open hand, into the corner. When Nathaniel tried to leave a second time, Kashonda stated that Johnson picked him up by the arm and leg and let him go. Nathaniel then fell to the floor, hitting his head.

Martese Hilton, another student in Johnson's class, testified that Nathaniel was angry about being asked to recite a poem and tried to leave the classroom. Martese stated that he saw Johnson grab Nathaniel and push him into a corner when Nathaniel attempted to leave the classroom. When Nathaniel next attempted to leave the room, Martese said that Johnson pushed him to the floor.

Another student, Marcus Lacey, who was present in Mr. Young's classroom, said that he overheard Nathaniel tell Mr. Young that Johnson had pushed him down the stairs.

Johnson, himself, denied using any physical force on Nathaniel on February 26, 1986.

Based on these testimonies, the hearing officer issued an opinion finding that although the Board had proved by a preponderance of the evidence that Johnson had "engaged in a degree of physical contact with Nathaniel," a student under his supervision, it had not proved that Johnson was the source of the damage sustained by Nathaniel as alleged in the Board's charge and specifications. The hearing officer reached these conclusions because of the discrepancies in testimony regarding the degree of physical contact between Johnson and Nathaniel, and the lack of probative evidence to establish that Nathaniel did not injure himself running out the door and running down two flights of stairs.

Since the hearing officer found that Johnson had not caused Nathaniel's injuries, and because he found Johnson's record otherwise unblemished, he determined that Johnson's conduct was not irremediable. Since a finding of irremediability is required by section 34—85 (Ill. Rev. Stat. 1983, ch. 122, par. 34—85), before a tenured teacher may be dismissed without notice, the hearing officer found that the Board's dismissal of Johnson without notice was improper and ordered Johnson reinstated with full back pay for the period of suspension.

The Board appealed the decision of the hearing officer of the State Board to the circuit court of Cook County. Judge Kenneth L. Gillis found that the hearing officer's conclusions were supported by the evidence and affirmed the decision of the hearing officer.

■ Plaintiff and defendants agree that the authority to dismiss a tenured teacher lies in section 34—85 of the Illinois School Code. (Ill. Rev. Stat. 1983, ch. 122, par. 34—85.) According to this statute, no tenured teacher shall be removed except for cause, and written warnings must be given to a tenured teacher before dismissal, if the causes assigned for dismissal are considered remediable. Since no written warnings were given to Johnson, the Board's jurisdiction to dismiss him depends upon a finding of irremediability.

■ The test for remediability has been established by the Illinois Supreme Court. (*Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326.) In *Gilliland*, the court established the following test:

> "The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned him or her." (67 Ill. 2d at 153, 365 N.E.2d at 326.)

A determination of irremediable conduct therefore requires that both parts of the *Gilliland* test be satisfied. First it must be shown that damage has already been done to the students, faculty, or school, and secondly, that the damage could not have been corrected by the teacher had he or she been warned that such conduct, if not corrected but instead allowed to recur, could lead to dismissal. The Board assumes the burden of proving, by a preponderance of the evidence, at the hearing before the State Board, that both parts of the *Gilliland* test have been met and the conduct complained of is in fact irremediable. (*Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984.) While the parties agree on the standard for dismissal, the test for remediability and the standard of proof required to meet this test, they disagree as to whether the Board did in fact meet its burden of proof at the administrative hearing.

■ Review of the hearing officer's determination is governed by the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*). The scope of review is limited to whether the agency's findings of fact are sustained by the evidence, and an agency's findings of fact will not be disturbed unless they are manifestly against the weight of the evidence, or unless there is no substantial evidence

to support them. *Mohler v. Department of Labor* (1951), 409 Ill. 79, 97 N.E.2d 762; *Peterson v. Board of Trustees of the Firemen's Pension Fund* (1973), 54 Ill. 2d 260, 296 N.E.2d 721.

In the case at bar, the hearing officer found that the Board did not meet its burden as to either part of the test by the preponderance of the evidence standard as required by law and, thus, reversed the Board's decision. The hearing officer found that although the Board had proved by a preponderance of the evidence that Johnson had engaged in inappropriate and unprofessional physical contact with Nathaniel, it had failed to prove by a preponderance of the evidence that defendant Johnson was the source of the damage sustained by Nathaniel on February 26, 1986, and therefore had not met its burden as to the first part of the *Gilliland* test. The hearing officer also observed that he had serious doubts that Johnson was the sole cause or even a contributory cause of the injury sustained by Nathaniel. The hearing officer came to these conclusions because of the conflicting testimonies as to how Nathaniel was hurt and also because there was no probative evidence that Nathaniel did not injure himself by running out the doorway and by running down two flights of stairs.

Even though the accounts of Kashonda Jackson, Martese Hilton, and Marcus Lacey differ from the accounts of Nathaniel and Johnson (the hearing officer indicated that he did not believe Johnson's testimony that there was no contact between him and Nathaniel), as to exactly what occurred on February 26, 1986, they all establish some degree of physical abuse to Nathaniel by Johnson. That physical injury did occur to Nathaniel was testified to by Dr. Pincham, who confirmed that Nathaniel had suffered a contusion to the chest.

As the hearing officer points out, there is no probative evidence to establish that Nathaniel did not injure himself in some other manner than by his contact with Johnson. This very fact, that no evidence was introduced to indicate any other ways in which Nathaniel might have been injured, strengthens the argument that Nathaniel was in fact injured by Johnson.

As stated earlier, the standard of proof required of the Board to prove damage to the student is "preponderance of evidence." "Preponderance of evidence" is defined by Black's Law Dictionary as "[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it. ***" (Black's Law Dictionary 1064 (5th ed. 1979).) Since no evidence was offered in opposition to the Board's evidence, and since the credibility of the Board's evidence is not at issue, the hearing officer had no option but to find, as was argued persuasively by the Board, that the uncontro-

verted evidence established that Johnson caused Nathaniel harm. The hearing officer's failure to do so is against the weight of the evidence, and, therefore, his finding that Johnson did not cause damage to Nathaniel is incorrect.

In addition to finding that the Board did not meet its burden as to the first part of the *Gilliland* test (causing damage to Nathaniel), the hearing officer also found that the Board did not satisfy its burden as to the second part of the *Gilliland* test and had not proved that Johnson's conduct was irremediable or uncorrectable even if given a prior warning.

■ Illinois case law has found that conduct is irremediable and no prior warnings need be given before dismissal when such conduct has occurred over long periods of time. (*Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.) In *Gilliland,* a teacher's conduct was found to be irremediable. In that case, the complained-of conduct took place over a four-year period and involved extensive parental complaints, discussions with the principal and no improvement on the part of the teacher. The teacher was giving excessive homework to her class, was not explaining assignments, was shouting at her class, and was involved with spanking, shaking, and book throwing at the children. Other cases in which a teacher's conduct has been held irremediable include a teacher's continuous pattern of cruelty culminating in an incident where he held a child by the hair and slapped her 10 to 13 times until she was bleeding in the mouth; a sixth-grade teacher who continuously used a cattle prod to discipline students, and a teacher who was repeatedly warned by her principal, but continued to beat students with a curtain rod, an extension cord, and a club made out of five pieces of balsa wood nailed together and wrapped with masking tape. *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270; *Rolando v. School Directors of District No. 125* (1976), 44 Ill. App. 3d 658, 358 N.E.2d 945; *Lowe v. Board of Education* (1979), 76 Ill. App. 3d 348, 395 N.E.2d 59.

In two cases which are more factually similar to the case at bar, teacher conduct has been found to be remediable. (*Swayne v. Board of Education of Rock Island School District No. 41* (1986), 144 Ill. App. 3d 217, 494 N.E.2d 906; *Board of Education of School District No. 131 v. State Board of Education* (1983), 99 Ill. 2d 111, 457 N.E.2d 435 (hereinafter referred to as *Slavin*).) *Swayne* involved a long-time teacher with an otherwise unblemished record and one incident of spanking with a yardstick. In *Slavin,* a long-time teacher used physical force to compel children to sit in desks, to stand in a line in the

hall, and even once picked up a student who would not stop talking and threw him into a desk, bruising his ribcage and cutting him behind the ear. While the student did not seek medical treatment, he did leave school and showed his injuries to the principal the next day.

In evaluating these cases, the courts considered not only the severity of the injury suffered by the student, but also the teacher's prior record and other warnings given to him, if any. In all of the cases where a teacher's conduct was found to be irremediable, punishment was severe and premeditated (even if degree of injury was undocumented by medical records), numerous warnings had been given to the teacher, and the conduct had gone unchecked over a long period of time. Where teacher conduct was found to be remediable, injury or damage was less severe, no prior warnings had been given and the conduct involved was relatively short lived.

██ In the case at bar, Johnson, like the teachers in *Slavin* and *Swain*, had a record unblemished by prior warnings from his principal or prior complaints of corporal punishment from parents or teachers. Although the Board asserts that Johnson regularly used corporal punishment, this assertion is not established by the record, which shows no pattern of physical abuse, but only that Johnson used physical force to push children into their seats when necessary to intervene in a "fracas."

In addition to considering a teacher's history of prior warnings and prior misconduct, Illinois courts have also considered the severity of the damage suffered by the student in resolving the question of the remediability of the teacher's behavior. (*Slavin*, 99 Ill. 2d 111; *Swayne*, 144 Ill. App. 3d 217.) In the cases where remediabilty was found, damage was not severe and medical treatment was not sought. In *Swayne*, the child did not miss school. In the case at bar, Nathaniel did suffer a contusion to the chest and possible fracture of a rib. He did seek medical treatment and did miss a day of school. Neither the hearing officer nor the circuit court considered this factor in its determination of remediability, but instead focused on Johnson's otherwise unblemished record and the lack of a pattern of physical abuse.

A comparison of the facts of the case at bar with *Slavin* reveals a fairly similar injury to the students involved. Both Nathaniel and the student in *Slavin* suffered bruising to the chest, Nathaniel as a result of allegedly being punched and the other child from having been thrown into a desk. Both children missed school as a result of injury, the child in *Slavin* leaving school immediately after the incident and returning the next day, and Nathaniel by staying home the next day. While Nathaniel sought treatment at a hospital, the other child did

not. The facts of these cases are so similar that it is likely that a court which found the *Slavin* injury not severe enough to affect a finding of remediability would also determine the injury in the present case not severe enough to affect a finding of remediability for Johnson.

Thus, although the Board contends that case law supports a finding of irremediability, the hearing officer determined that the Board had not proved by a preponderance of the evidence that Johnson's conduct was irremediable and could not be corrected by a prior warning as required by the second part of the *Gilliland* test. The hearing officer's determination in that regard is not against the manifest weight of the evidence.

■ The Board also argues that, in addition to case law dictating a finding of irremediability, since Johnson's conduct violated a Board rule irremediability must be presumed. While it is true that Board Rule 6—21 does prohibit corporal punishment of any kind in the Chicago public schools (Board's Ex. No. 3), there simply is no support for the argument that violation of a Board rule equals irremediability *per se*. While the Board does cite the case of *Carter v. State Board of Education* (1980), 90 Ill. App. 3d 1042, 414 N.E.2d 153, as support for this contention, *Carter* involved a situation where a teacher's conduct was found to be irremediable not only because he employed corporal punishment in violation of a Board rule, but also because he failed to maintain discipline in the classroom, had two unsatisfactory warnings which failed to improve his conduct, and also destroyed his classes' chances for a whole year's education. (*Carter*, 90 Ill. App. 3d at 1044, 1047.) Therefore, *Carter* does not support a finding of irremediability *per se*. Moreover, there is support for the argument that some physical force may be used to maintain safety and discipline in the classroom (Ill. Rev. Stat. 1987, ch. 122, pars. 24—24, 34—84(a)), and it is arguable that Johnson was maintaining discipline.

Thus neither case law nor the *per se* irremediability theory supports the Board's contention that Johnson's conduct was irremediable and uncorrectable by prior warning. The hearing officer's determination that the Board failed to meet its evidentiary burden of proving Johnson's conduct to be irremediable is supported by the manifest weight of the evidence and is affirmed by this court.

The judgment of the circuit court is affirmed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.