JAMES BROWN, Petitioner-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Respondents-Appellees.

Fourth District    No. 4—94—0742

Argued July 11, 1995.—Opinion filed August 17, 1995.

James P. Brinkoetter, Jr. (argued), of Brinkoetter Law Office, of Decatur, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jessie A. Wang-Grimm, Assistant Attorney General (argued), of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

In an administrative review proceeding, the circuit court of Macon County affirmed a decision of the Department of Public Aid (Department) denying the request of petitioner James Brown for release from or modification of the Department's administrative support orders concerning Brown's daughter, Sonja, a 19 year old who received assistance from the Department while residing with her parents. Petitioner brings this appeal. Phil Bradley, successor to Robert Wright, acting Director of the Department, is a respondent-appellee along with the Department.

The issues are whether: (1) section 10—2 of the Illinois Public Aid Code (Code) (305 ILCS 5/10—2 (West 1992)) violates the equal protection guarantees of the United States and Illinois Constitutions by

requiring parents who allow adult children between ages 18 and 21 to reside with them to reimburse the Department for support provided to those children while it imposes no similar obligation upon parents whose adult children ages 18 to 21 do not reside with them; (2) the reimbursement requirement of section 10—2 of the Code violates petitioner's right to substantive due process guaranteed by the United States and Illinois Constitutions where (a) petitioner's daughter had a child born out of wedlock, (b) she applied for and received public aid, and (c) petitioner and his wife allowed his daughter to reside with them; and (3) the Department's decision to require reimbursement from petitioner for public aid received by his daughter who resided with him and his wife was arbitrary and capricious or against the manifest weight of the evidence. We affirm.

Sonja Brown (Sonja), born September 15, 1973, is the daughter of Joann Brown (Joann), and petitioner. Sonja has resided with her parents since birth. On February 1, 1992, while pregnant, Sonja applied for benefits for herself under the Aid to Families with Dependent Children (AFDC) program. Her application was approved in February 1992. From May through August 1992, Sonja received $204 in monthly AFDC benefits. On September 22, 1992, Sonja gave birth to a son. Sonja received $221 in AFDC benefits for September 1992. In October, November, and December 1992, and the ensuing months, she received $259.

Throughout the period in which she received AFDC benefits, Sonja and her son resided with her parents and her brother at their home in Decatur, Illinois. Sonja received financial support from petitioner, including tuition for her to attend Richland Community College (Richland) as a full-time student, health insurance for her son and herself, and the provision of a car. Sonja did not pay petitioner rent to live in his home, and her mother provided free daycare for Sonja's son.

It is unnecessary for our analysis to relate the correspondence between the parties prior to the administrative hearing. At the administrative hearing held on April 9, 1993, Becky Stone, a family support specialist from the field recovery unit of the Department's Macon County office, testified that because petitioner failed to submit documents to verify his income despite the Department's repeated requests, petitioner's support obligation was established as the maximum, or entire amount of support, that had been provided to Sonja. Since the Department distributed $204 in benefits for Sonja in May 1992, for example, petitioner was assessed the full $204 for his support obligation, based on the Department's determination that petitioner was a relative responsible for Sonja's financial support

while she lived in his home. The same amount of support was assessed for June, July, and August 1992.

Stone explained that in September 1992, the Department began distributing benefits for two people, Sonja and her newborn son. In September, Sonja received AFDC benefits in the amount of $221. Only $111 of that amount was for Sonja's support, and, therefore, petitioner was only required to offset Sonja's public aid benefits by that amount. In October and November 1992, the Department expended $259 monthly for Sonja and her son, and petitioner had a support obligation for the $130 that went toward Sonja's own support. Petitioner's support obligation was set at the same amount for December 1992 through March 1993. Stone stated that the administrative support order would be in effect with regard to petitioner's obligation as long as Sonja lived at home, received public aid for both her son and herself, and was under 21 years of age.

Sonja testified that she was 19 years old and would turn 20 later that same year. Neither of her parents was legally obligated to keep her as a member of the household. It was her choice to live with her parents until she finished her education. She was a full-time student at Richland pursuing an associate degree, and she planned to continue her education thereafter. Sonja stated that she was considered a dependent of petitioner and received medical and dental benefits under his group plan at Wagner Casting Company (Wagner). Her parents purchased health insurance for her son. She did not need to live in subsidized housing because her parents provided support to her.

Joann testified that she and petitioner had three children, a 24-year-old daughter, Sonja, and a 12-year-old son, and that the latter two still lived at the parental residence. She stated that she had not worked since being diagnosed with lupus. Her disease had been stabilized for seven years through medication. Joann stated that her disease was a financial burden for the family. Joann explained that Sonja sought public aid benefits on her own, wanting to take as much responsibility for her baby as she could. Neither Joann nor petitioner encouraged her to seek public aid.

Petitioner testified he had been employed at Wagner for over 20 years. His health plan from Wagner provided coverage for his wife's medical expenses. He paid for Sonja's college tuition of $1,800 per year and provided her with a car. Sonja assisted with household expenses with the public aid benefits she received. He stated that he paid $400 per month for his mortgage and approximately $300 to $400 per month for food. Petitioner's 1992 Federal income tax return indicated that his gross earnings were $31,629. As the result of claim-

ing four exemptions, or dependents, petitioner subtracted $4,000 from his taxable income in 1992. He stated that he was amending his tax return to include Sonja's son as a fifth exemption. Petitioner stated that he did not wish for his daughter and her child to live in subsidized housing and to be exposed to drugs, crime, and gangs. They were allowed to live at his home for that reason.

The hearing officer then resumed questioning Stone regarding the method by which the Department calculated petitioner's support obligation. Stone referred to title 89, section 103.TABLE A, of the Illinois Administrative Code (89 Ill. Adm. Code § 103.TABLE A (1994)). Stone explained that, based on petitioner's gross annual income of $31,629 and claim of five dependents, his support obligation according to table A would be $205 per month. The Department assessed against the responsible relative the lesser of the actual amount of support paid to the recipient or the amount of support established under table A. According to Stone, there was no statutory authority that permitted the Department to consider any figures outside of the responsible relative's adjusted gross income, such as out-of-pocket expenses that the relative elects to incur on behalf of the public aid recipient.

Petitioner contended at the hearing that financial hardship could be considered by the Department in reducing, modifying, or excusing his support obligation. Petitioner claimed that Joann's medical condition and expenses were matters to be taken into consideration by the hearing officer.

The Department, adopting the hearing officer's findings of fact, determined that petitioner was responsible for the entire $204 per month previously paid by the Department for Sonja's support from May through August 1992, only $111 of the $221 in AFDC benefits Sonja received in September 1992, and $130 per month for October and November 1992. The petitioner's total support obligation for the period between May and December 1992 was $1,187. From December 1992 until the hearing, Sonja had continued to collect $259 per month in AFDC benefits, and it was determined that petitioner was obligated to contribute $130 per month toward Sonja's current support. The decision stated that the Department policy did not allow for deviations from table A to account for the considerations requested by petitioner.

On administrative review, the circuit court ruled that the challenged statute did not violate the equal protection guarantees and affirmed the Department's decision. The order did not rule as to the due process issue raised by petitioner, and no motion for reconsideration was filed by petitioner. However, the issue is not waived since an

issue concerning the constitutionality of a statute may be raised at any time. *People v. Bryant* (1989), 128 Ill. 2d 448, 453-54, 539 N.E.2d 1221, 1224.

■ The first issue is whether section 10—2 of the Code violates the equal protection guarantees of the United States and Illinois Constitutions by requiring parents who allow adult children between ages 18 and 21 to reside with them to reimburse the Department for support provided to those children while it imposes no similar obligation upon parents whose adult children ages 18 to 21 do not reside with them. Section 10—2 of the Code states in relevant part:

> "The parents are severally liable for the support of any child under age 21, except that a parent is not liable for a child age 18 or over if such child is not living with the parent or parents, and a parent is not liable for a child of any age if the child has married and is not living with the parent or parents. ***
>
> In addition to the primary obligation of support imposed upon responsible relatives, such relatives, if individually or together in any combination they have sufficient income or other resources to support a needy person, in whole or in part, shall be liable for any financial aid extended under this Code to a person for whose support they are responsible, including amounts expended for funeral and burial costs." 305 ILCS 5/10—2 (West 1992).

The second district has recently decided this statute violates the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), and the Supreme Court of Illinois allowed leave to appeal on June 1, 1995. (*Jacobson v. Department of Public Aid* (1994), 269 Ill. App. 3d 359, 363, 646 N.E.2d 949, 952, *appeal allowed* (1995), 162 Ill. 2d 568.) The parties have not requested a stay of these proceedings pending the supreme court's determination in *Jacobson*, and the Department has indicated there are thousands of cases of this type pending. We disagree with the conclusion reached in *Jacobson*.

■ There is a strong presumption of constitutionality of a statute. (*People v. Shephard* (1992), 152 Ill. 2d 489, 499, 605 N.E.2d 518, 523.) The equal protection analysis is the same under the United States or Illinois Constitution, and the heart of the equal protection guarantee is that persons similarly situated shall be treated similarly. (*Jacobson*, 269 Ill. App. 3d at 364, 646 N.E.2d at 952.) We not only find that the parents of 18- to 21-year-old AFDC recipients who live at home are not similarly situated with those whose children live separately, but that this distinction affords a rational basis for the classifications in the statute. The legislature may even treat similarly situated persons differently if there is a reasonable basis for doing so and as

long as a suspect classification or a fundamental right is not involved. *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162, 1166-67.

Relying on the United States Supreme Court's determination that close relatives are not a suspect or quasi-suspect class (*Lyng v. Castillo* (1986), 477 U.S. 635, 638, 91 L. Ed. 2d 527, 533, 106 S. Ct. 2727, 2729), the *Jacobson* court declined to find the class of parents whose 18- to 21-year-old children live at home to constitute a suspect class. (*Jacobson*, 269 Ill. App. 3d at 365, 646 N.E.2d at 953.) Then, relying on *Bowen v. Gilliard* (1987), 483 U.S. 587, 593-601, 97 L. Ed. 2d 485, 496-501, 107 S. Ct. 3008, 3013-17 (requirement under the Social Security Act (42 U.S.C. § 602(a)(38) (Supp. III 1985)) requiring AFDC applicants to include any parent or dependent minor sibling living with them in the family unit for determination of benefits did not sufficiently interfere with any fundamental right as to warrant heightened scrutiny), the *Jacobson* court concluded that section 10—2 did not directly and substantially interfere with family living arrangements so as to interfere with a family's fundamental right to live in the type of family unit it chooses even though some families may choose to modify the living arrangements in order to avoid the effect of the statute. (*Jacobson*, 269 Ill. App. 3d at 366, 646 N.E.2d at 954.) We agree with this portion of the *Jacobson* analysis.

In an attempt to persuade this court that a fundamental right is involved in this case, petitioner quotes *Meyer v. Nebraska* (1923), 262 U.S. 390, 400-01, 67 L. Ed. 1042, 1046, 43 S. Ct. 625, 627, and *Moore v. City of East Cleveland* (1977), 431 U.S. 494, 504-06, 52 L. Ed. 2d 531, 541, 97 S. Ct. 1932, 1938-39. The fundamental rights involved in *Meyer* were the freedom of modern language teachers to practice their vocation, the opportunities of pupils to acquire knowledge, and the power of parents to control their children's education. Section 10—2 of the Code has no impact on those rights. In addition, the *Meyer* decision employed a rational basis test, rather than a strict scrutiny test. *Meyer*, 262 U.S. at 402-03, 67 L. Ed. at 1046-47, 43 S. Ct. at 628.

In *Moore*, the Court considered regulations which prohibited a grandson from residing with his grandmother, his uncle and his cousin in housing zoned single family and imposed criminal penalties for violations of those regulations. The Court held that East Cleveland could not by ordinance standardize the family unit by rejecting extended family households and reversed the grandmother's criminal conviction. Obviously, the regulation in *Moore* had a direct and significant impact on the fundamental right to live in a particular type of family unit. Here, as the court in *Jacobson* pointed out, section 10—2 of the Code does not prohibit adult children between the

ages of 18 and 21 from living in their parents' home. Thus, section 10—2 does not directly and substantially impact the choice of family living arrangements.

■ Having found no suspect class or fundamental right being affected by the statute, the *Jacobson* court then moved to a consideration of whether the statute met the rational basis test:

"It is well settled that a statute which involves economic or social welfare policy and does not create a suspect classification or infringe upon a fundamental right will be upheld against an equal protection challenge if rationally related to a legitimate State purpose. (*American National Bank & Trust Co. v. Anchor Organization for Health Maintenance* (1991), 210 Ill. App. 3d 418, 425[, 569 N.E.2d 128, 133].) Courts applying the rational basis test simply inquire whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 74[, 566 N.E.2d 1283, 1291].) Moreover, courts will uphold a legislative classification against an equal protection challenge if any set of facts can reasonably be conceived which would sustain the classification. *Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 275[, 595 N.E.2d 1060, 1065]." *Jacobson*, 269 Ill. App. 3d at 367, 646 N.E.2d at 954.

The *Jacobson* court recognized that (1) the overriding purpose of the Code is the alleviation of poverty; (2) the allocation of the State's finite fiscal resources must be accomplished with the goal of providing relief to the greatest number of people; and (3) the purpose expressly stated in the Code is to supplement, not supplant, the family unit's primary and continuing obligation for self-support, which obligation applies whenever a family unit of parents and children or husband and wife remains intact and resides in a common household, or even when the family unit has been broken by the absence of one or more of the members. (*Jacobson*, 269 Ill. App. 3d at 367, 646 N.E.2d at 954-55, citing *Lawrie v. Department of Public Aid* (1978), 72 Ill. 2d 335, 348, 381 N.E.2d 226, 230, *Rivera v. Department of Public Aid* (1985), 132 Ill. App. 3d 213, 217, 476 N.E.2d 1143, 1146, and 305 ILCS 5/1—1, 10—1 (West 1992).) However, *Jacobson* also found a countervailing purpose to maintain and strengthen the family unit. (*Jacobson*, 269 Ill. App. 3d at 367, 646 N.E.2d at 955; 305 ILCS 5/1—1 (West 1992).) Even though the *Jacobson* court recognized (1) the function of the court was not to second-guess the wisdom of the legislation and (2) the legislature had "legitimate" and "paramount" reasons in (a) maintaining an equitable balance in the economic status of the families of welfare recipients by pursuing support obligations from responsible relatives to aid necessitous family members and (b) al-

locating public funds to meet the needs of the largest number of welfare recipients, the *Jacobson* court, nevertheless, found the statute violated the equal protection clauses because it encouraged parents to evict their children to avoid incurring a support obligation. *Jacobson*, 269 Ill. App. 3d at 368-69, 646 N.E.2d at 955-56.

■ What the second district did in *Jacobson* was to reweigh the considerations recognized and already considered by the legislature and decide that it did not agree with the legislative decision. A court's function is not to pass on the wisdom or lack thereof in legislation. *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 111, 566 N.E.2d 1283, 1308.

■ Under the circumstances of this case, there is a rational basis for the legislation. Where parents have the ability to and demonstrate the willingness to continue supporting a child between the ages of 18 and 21 years of age by allowing the child to remain at home, as in the case at bar, then the State should be relieved of any burden of assisting with that child's support, allowing the allocation of limited public aid funds to persons who really need them even if those other persons are also between the ages of 18 and 21 years, but are not living in their parents' home because their parents are unable or unwilling to support them. One purpose of the statute is to eliminate or reduce the possibility of abuse of the public aid system. The legislature could reasonably find that parents who allow their adult children between ages 18 and 21 to live with them demonstrate a greater ability to provide financial assistance to those children. In addition, if a person such as Sonja is allowed to collect public aid, her parents would be sharing in the welfare program. There was testimony that Sonja used the funds she received to contribute to family expenses and that petitioner was allowed to claim a tax exemption for Sonja.

This is a tough decision, but it is one within the province of the legislature, rather than the judiciary.

> "It is well established that the legislatures, not the courts, have the primary role in our democratic society in deciding what the interests of the public require and in selecting the measures necessary to secure those interests. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115; *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 127.) Recognizing the legislature's broad power to provide for the public health, welfare and safety, the courts are hesitant to second-guess a legislative determination that a law is desirable or necessary." (*People v. Kohrig* (1986), 113 Ill. 2d 384, 396-97, 498 N.E.2d 1158, 1162.)

We deem there was a rational basis for section 10—2 of the Code and

it does not violate the equal protection clauses of the United States and Illinois Constitutions.

■ The next issue is whether the reimbursement requirement of section 10—2 of the Code violates petitioner's right to substantive due process guaranteed by the United States and Illinois Constitutions. Both the United States and Illinois Constitutions protect the petitioner from being deprived of life, liberty, or property without due process of law. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) If the life, liberty, or property interest to be protected is a fundamental right, then there must be a compelling State interest to justify significant interference by a statute in the fundamental right and the statute must be narrowly drawn to express only the legitimate State interest at stake. (*People v. R.G.* (1989), 131 Ill. 2d 328, 342, 546 N.E.2d 533, 540, citing *Roe v. Wade* (1973), 410 U.S. 113, 155, 35 L. Ed. 2d 147, 178, 93 S. Ct. 705, 727-28.) If a fundamental right is not involved, then the statute need only be rationally related to the purpose of the legislation. *R.G.*, 131 Ill. 2d at 342, 546 N.E.2d at 540.

Heightened constitutional protection has been given to primary rights relating to personal intimacies of home, family life, marriage, motherhood, procreation, child rearing, and education. (*R.G.*, 131 Ill. 2d at 343, 546 N.E.2d at 541; *Kohrig*, 113 Ill. 2d at 394-95, 498 N.E.2d at 1161.) However, as has already been noted, that does not mean that every regulation dealing with one of these areas warrants heightened scrutiny. See *Boynton v. Kusper* (1986), 112 Ill. 2d 356, 368, 494 N.E.2d 135, 140 (discussing freedom to marry as a fundamental right).

■ We have already determined that no significant interference in a fundamental right was involved in the operation of section 10—2 of the Code. The facts of this case demonstrate that parents' decision to assist their child does not necessarily turn on whether the child can get public aid benefits. Joann testified that it was Sonja who decided to apply for public aid. The availability of public aid had no influence on the decision of petitioner and his wife to allow their daughter to continue living at home. As a result, the statute, in general and as it applies to the petitioner, does not violate due process in light of the rational basis for the statute already discussed.

■ The final issue is whether the Department's decision to require reimbursement from petitioner for public aid received by his daughter who resided with him and his wife was arbitrary and capricious or against the manifest weight of the evidence. The findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992).)

"Courts may not interfere with the discretionary authority vested

in an administrative agency unless that authority is exercised in an arbitrary and capricious manner or the administrative decision is contrary to the manifest weight of the evidence. (*Hardin County Education Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 528 N.E.2d 737.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *Service Employees International Local Union No. 316 v. Illinois Educational Labor Relations Board* (1987), 153 Ill. App. 3d 744, 505 N.E.2d 418." *American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d 521, 524-25, 554 N.E.2d 476, 478.

Here, petitioner made no proof of hardship. Although Joann had lupus, it had been stabilized for seven years through medication. The medication was paid for by petitioner's medical insurance provided by his employment. Although Joann testified her disease was a financial burden on the family, there was no testimony as to how it was a burden. Although she had not worked since being diagnosed with lupus, there was no evidence she could not work or the amount of income the family lost by her not working. The Department's decision was not against the manifest weight of the evidence or arbitrary and capricious.

Petitioner contends that his wife's illness is a hardship and that the Department's decision was arbitrary because it made no finding as to hardship. However, the Department's decision said that the Department policy did not allow for deviation from table A for this type of consideration.

Section 10—3 of the Code provides that the Department's standard to measure the ability of responsible relatives to provide support and the rules shall take into account the:

"present or future contingencies having direct bearing on maintenance of the relative's self-support status and fulfillment of his obligations to his immediate family, and any unusual or exceptional circumstances including estrangement or other personal or social factors, that have a bearing on family relationships and the relative's ability to meet his support obligations." (305 ILCS 5/10—3 (West 1992).)

In addition, the statute provides that the Department may establish guidelines based on sections 504, 505, and 505.2 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504, 505, 505.2 (West 1992)). The standard or guidelines, rules and procedures are to be applied:

"in determining the ability of responsible relatives to provide support for applicants for or recipients of financial aid under this Code, except that the administrative enforcement unit may apply such standard or guidelines, rules and procedures at its discretion with respect to those applicants for or recipients of [AFDC] and other persons who are given access to the child and spouse support services of this Article as provided by Section 10—1." 305 ILCS 5/10—3 (West 1992).

The Department's rules provide that the standards set out in table A are to be applied to the responsible relative's (see 89 Ill. Adm. Code § 103.10(b)(3) (1994)) gross income, as shown in the most recent Federal income tax return, to determine the liability for assistance. (89 Ill. Adm. Code § 103.20(b)(1)(C) (1994).) The responsible relative is liable for all assistance provided to or on behalf of the recipient unless the relative establishes a lower ability to support by providing *income* and *asset* information to the Department. (89 Ill. Adm. Code §§ 103.30(a), (b) (1994).) A redetermination of the responsible relative's ability to support is allowed if the relative has sustained a significant reduction in income since the original determination or there has been an increase in the number of the relative's dependents. 89 Ill. Adm. Code §§ 103.30(a), (b) (1994).

Petitioner makes no argument that the Department's rules and regulations do not implement the statute. The Department has both quasi-legislative and quasi-judicial functions. The Code gives the Department authority to establish standards of financial aid and services. (305 ILCS 5/1—1 (West 1992).) Judicial review of the Department's rule-making is limited. The Department's rules and regulations have the force and effect of law, are presumed valid, and will be construed by the same standards as statutes. The court will not substitute its judgment for that of an agency acting in its rule-making capacity, and the regulations will not be set aside unless they are arbitrary and capricious. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 161-62, 613 N.E.2d 719, 724-25.

Petitioner cites only section 10—3 of the Code and *Board of Education v. Johnson* (1991), 211 Ill. App. 3d 359, 570 N.E.2d 382. In *Johnson*, however, the court considered the findings of fact of a hearing officer and the quasi-judicial capacity of the agency. (*Johnson*, 211 Ill. App. 3d at 363-64, 570 N.E.2d at 385-86.) Petitioner does not directly attack the validity of the Department's rules, and no such attack was made before the administrative agency. Petitioner's argument does raise an implication that the consideration of hardship due to medical care of a family member other than the recipient of

public aid may be allowed by statute. Rules and regulations promulgated under the authority of a statute should be construed together with the statute to insure a sound and effective legislative program. (*Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 485, 370 N.E.2d 3, 7.) When the statute and administrative regulations conflict, the statute governs, and the regulations are invalid. (*Schilling v. Book* (1980), 84 Ill. App. 3d 972, 976, 405 N.E.2d 824, 827.) However, in this case, petitioner has not made a sufficiently compelling argument to declare the Department's rules to be invalid since petitioner does not even discuss the rules.

The order of the circuit court of Macon County affirming the Department's decision is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.