2025 IL App (1st) 242535-U

No. 1-24-2535

Order filed June 13, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* G.F., a Minor, | Appeal from the |
| (People of the State of Illinois, | Circuit Court of Cook County. |
| Petitioner-Appellee, | |
| | No. 21JA74 |
| v. | |
| | Honorable |
| I.F., | Jennifer Payne, |
| | Judge, presiding. |
| Respondent-Appellant.) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's orders appointing a private guardian, vacating the Department of Child and Family Services' guardianship, terminating wardship, and closing the case are affirmed where the circuit court's determination of the child's best interests was not against the manifest weight of the evidence.

¶ 2    Respondent I.F. appeals the circuit court's orders appointing D.V. as private guardian of G.F. and terminating the Department of Child and Family Services' wardship. On appeal, I.F. argues the evidence was insufficient to support the circuit court's findings. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      G.F. is a minor born in January 2021 to mother I.F. and putative father D.H. Due to safety concerns, the Department of Child and Family Services (DCFS) took G.F. into protective custody and placed her with maternal aunt D.V. Although G.F. was born in Cook County, Illinois, I.F. now resides in the state of Virginia.

¶ 5      I.F. suffered from serious mental health conditions both before and after G.F.'s birth. She was hospitalized for mental health issues twice in 2020. There was a history of domestic violence with both D.H. and I.F. One incident between I.F. and her mother involved I.F. pulling a knife on her mother. She also had a history of substance abuse. Due to these ongoing concerns, the circuit court found in September 2021 that I.F. was creating an "injurious environment" and that she needed additional services for her mental health.

¶ 6      On December 6, 2021, the circuit court made G.F. a ward of the court due to I.F.'s inability to care for her. The DCFS was granted guardianship. Initially, the permanency goal was for G.F. to return home to I.F. within 12 months, depending on I.F.'s progress. In July 2022, another permanency order was issued, also with a goal of G.F. returning home within 12 months. In January 2023, the circuit court entered an order requiring the DCFS to pay I.F.'s travel expenses so she could visit G.F. in Illinois once per month. Again the order stated the goal was to return G.F. home within 12 months.

¶ 7      In August 2023, the permanency goal was changed to private guardianship. Despite I.F. making some progress, she was not making adequate progress to allow G.F. to return home. She had additional incidents of domestic violence and substance abuse, as well as another psychiatric hospitalization.

¶ 8    In August 2024, a "pipe like" object was found at I.F.'s home. Due to issues with getting a drug test, I.F. missed her monthly visitations with G.F. in September, October, and November of 2024.

¶ 9    On September 20, 2024, the DCFS petitioned to appoint D.V. as G.F.'s permanent guardian and to vacate its own guardianship of G.F., terminate wardship, and close the case. The circuit court held a hearing on November 22. I.F. was unable to attend due to a conflict but was represented by counsel and did not ask for a continuance. The circuit court heard testimony from G.F.'s caseworker and D.V., with whom G.F. had been living since shortly after birth. The caseworker testified that D.V.'s home was safe and there was a strong relationship between G.F. and D.V. She also stated that I.F's mental health issues ruled out G.F. returning home and that it was in G.F's best interests for D.V. to become her guardian.

¶ 10    Before issuing its order, the circuit court reminded D.V. that this order would not terminate I.F.'s right to in-person visitation. Although D.V. would not be financially responsible for I.F.'s transportation as the DCFS had been, she was still required to allow in-person visits to happen. The circuit court ultimately granted the petition for permanent guardianship. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 11                                    II. ANALYSIS

¶ 12    Respondent I.F. argues that the circuit court's findings were against the manifest weight of the evidence because there was insufficient evidence to establish that appointing a private guardianship and terminating the public wardship was in the child's best interests. "A court's ruling is against the manifest weight of the evidence if it is unreasonable, arbitrary and not based on the evidence, or when the opposite conclusion is clearly evident from the record." (Internal

quotation marks omitted.) *In re Aaron L.*, 2013 IL App (1st) 122808, ¶ 28 (quoting *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 19). "The inquiry on appeal is not whether other conclusions are possible. Rather, the inquiry is whether the result reached is reasonable." *Kresin v. Sears, Roebuck and Co.*, 316 Ill. App. 3d 433, 441 (2000). "A strong presumption in child custody cases favors circuit court decisions." *In re Kam. B.*, 2024 IL App (1st) 240599, ¶ 50.

¶ 13    The circuit court's decision to appoint a private guardian must be based on the best interests of the child, which are superior to all other factors. *In re V.M.*, 352 Ill. App. 3d 391, 397-98 (2004). The circuit court must find that the best interests of the child require appointment of a guardian by a preponderance of the evidence. *Kam B.*, 2024 IL App (1st) 240599, ¶ 50. "Preponderance of the evidence is defined as 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re Aniylah B.*, 2016 IL App (1st) 153662, ¶ 41 (quoting *Board of Education of the City of Chicago v. Johnson*, 211 Ill. App. 3d 359, 364 (1991)). The Juvenile Court Act lists numerous factors that must be considered when determining what the best interests of the child are, including: the physical safety of the child, the child's background and ties, the child's sense of attachments, and the child's need for permanence. 705 ILCS 405/1-3(4.05)(a), (c), (d), (g) (West 2024).

¶ 14    Here, the circuit court considered that there were no concerns about G.F.'s physical safety with D.V. as there had been with I.F. The circuit court also noted G.F.'s ties to D.V., including that G.F. had lived with D.V. almost her whole life, and the permanence that a private guardian would bring over remaining in wardship. Respondent acknowledges that "the court's decision here

was not directly contrary to the evidence that was presented," and she does not contest the specific bases for the circuit court's conclusion.

¶ 15 Instead, respondent contends that the presented evidence was insufficient to establish that the child's best interests would be served by the private guardianship order. Respondent noted that the DCFS will stop paying for her travel for in-person visitation when the wardship terminates. She argues that requiring her to pay for travel will have the practical effect of eliminating her in-person visits, and that this could in turn negatively impact the child. She contends that this possibility was not considered by the circuit court, and that if it had been considered, there would not have been a preponderance of the evidence to justify terminating wardship. However, in-person visits are not a factor listed in the Juvenile Court Act for determining a child's best interests. In-person visits affect listed factors, such as "development of the child's identity" and "continuity of affection." *Id*. § 1-3(4.05)(b), (d)(iv). The circuit court heard evidence that respondent's in-person visits were being supplemented by virtual visits, and that these virtual visits would continue whether or not the DCFS was paying for travel. Although not a perfect substitute, virtual visits can accomplish many of the same purposes as in-person visits.

¶ 16 Ultimately, respondent's contention about the sufficiency of the evidence fails due to the standard of review. There is an uncontested basis in the record that supports the circuit court's conclusion. Even if respondent's argument about the possible effects of the DCFS no longer paying for her travel was accepted as true, it would not establish that the opposite conclusion of the circuit court's finding was "clearly evident." There was still unrefuted testimony that private guardianship was in the child's best interests and evidence explaining why D.V. would be an appropriate

guardian for G.F. We therefore cannot say the circuit court's determination in this case was against the manifest weight of the evidence.

¶ 17                                III. CONCLUSION

¶ 18     The judgment of the circuit court of Cook County is affirmed.

¶ 19     Affirmed.